SAMUEL W. JOHNSON V. STATE OF NEBRASKA.

[FILED OCTOBER 23, 1889.]

1. **Rape:** EVIDENCE: SUFFICIENCY. To justify or sustain a verdict of guilty the proof must reach such degree of certainty as to exclude reasonable doubt. It is not sufficient to show that the accused *may* be guilty, but it must clearly appear that he is guilty of the specific offense charged.

2. **Proof** *held* insufficient to sustain the verdict.

3. **Instruction** set out in the opinion, *held* to be erroneous.

ERROR to the district court for Burt county. Tried below before WAKELEY, J.

*George B. Lake,* and *H. Wade Gillis,* for plaintiff in error:

The evidence is insufficient to sustain the verdict, especially as to intent to commit rape. (*Thompson v. State,* 43 Tex., 583.) An assault with intent to persuade a woman to submit to intercourse is not an assault with intent to commit rape. (*Pleasant v. State,* 8 Eng. [Ark.], 372; *Charles v. State,* 6 Id., 390; *Thomas v. State,* 16 Tex. App., 539; *Peterson v. State,* 14 Id., 162; *Saddler v. State,* 12 Id., 194; *Krum v. State,* 19 Neb., 732.) The testimony of those who had known plaintiff in error for many years, that they had never heard his reputation questioned, is the best evidence of good character. (*Fiske v. State,* 9 Neb., 66.)

*William Leese, Attorney General,* for defendant in error.

MAXWELL, J.

The plaintiff in error was convicted in the district court of Burt county of an assault with intent to commit a rape on his daughter, Constance Johnson, and sentenced to imprisonment in the penitentiary. The offense is alleged to

have been committed on the 24th of December, 1887, up-stairs at the house of the accused near Oakland, in Burt county, between five and six o'clock P. M. of that day. The complaining witness made no mention of the alleged assault to any person for several months after it was said to have occurred. There were no marks upon her person nor any evidence that an assault had been made, except her naked, unsupported statement made many months after the time above set forth. She claims to have called her sister Annie from the kitchen, a child nine years of age, to the door of her room and when she reached that point to have requested her to return to the kitchen. This witness, Annie, had evidently been instructed by some one in regard to her testimony, as she testifies with particularity to certain dates that a child of tender years would not notice or remember unless instructed thereon. If the testimony of the prosecuting witness is true, her mother was in the room below, and a stove pipe extended from a stove in her mother's room through the floor of the room upstairs in which she alleges she and her father were, but she made no outcry. She also testifies that during the evening of that day she played on the organ and sang for the entertain-ment of company till about 11 o'clock P. M.

The plaintiff in error testified in his own behalf and de-nies that he was upstairs at the time stated or that his daughter was there, or that he there, or at any other time or place, attempted to commit the offense charged. Being the evening before Christmas, a number of persons were at the house of the accused, who testify that he returned home about 5 P. M. of the day named, and that both he and his daughter were in the kitchen and were not upstairs at the time alleged. In addition to this a large number of neighbors and acquaintances of the plaintiff in error, who have known him intimately for years, testified that his character for virtue and morality was good. Upon such testimony as this it is difficult to see upon what ground the

jury could find a verdict of guilty. It is evident that they were misled or allowed their prejudices to influence their action. The evidence required to authorize and sustain a conviction is not that the accused *may* be guilty, but it must reach such degree of certainty as to exclude reasonable doubt.

This rule neither courts nor juries have a right to disregard. Every person is presumed to be innocent until proved to be guilty, and the degree of proof of guilt must be such as to render it morally certain that the accused committed the offense charged. In other words, to justify the laying of the heavy hand of the law upon a person and brand him as a felon, and bring disgrace upon him and his kindred, the proof must be of such a character as clearly to establish his guilt; and if it falls below that it is not sufficient. In the case at bar, if we give the testimony of the prosecutrix its full force and effect, there is a failure of proof of the degree of force necessary to constitute the offense; neither is there proof of such an attempt as is contemplated by the statute.

In *Hicks v. Com.*, 29 Central Law Journal, 305, the supreme court of Virginia, in considering an indictment charging the defendant with attempting to poison with intent to kill one A. by buying the poison and delivering it to one L. and soliciting her to administer it in coffee to A., says : "An attempt to commit a crime is compounded of two elements : (1) The attempt to commit it; and (2) a direct, ineffectual act done toward its commission (Code, sec. 3888; 2 Bish., Crim. Proc., sec. 71); or, as Wharton defines it, 'An attempt is an intended, apparent, unfinished crime.' Therefore the act must reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently

44

near to it to stand either as the first or some subsequent step in a direct movement toward the commission of the offense after the preparations are made. (*Uhl's Case*, 6 Gratt., 706; *McDade v. People*, 29 Mich., 50; Bouv. Law Dict., 'Attempt.') "

Thus it has been often held, under statutes similar to our own, that the purchase of a gun, with intent to commit murder, or the purchase of poison with the same intent, does not constitute an indictable offense, because the act done in either case is considered as only in the nature of a preliminary preparation, and as not advancing the conduct of the accused beyond the sphere of mere intent. "To make the act an indictable offense," says Wharton, "it must be a cause, as distinguished from a condition; and it must go so far that it would result in the crime, unless frustrated by extraneous circumstances." (1 Whart., Crim. Law, sec. 181.) This is well illustrated by the case of *People v. Murray*, 14 Cal., 159. In that case the defendant was indicted for an attempt to contract an incestuous marriage with his niece. It was shown that after declaring his intention to marry her he actually eloped with her, and sent for a magistrate to perform the ceremony, and at the trial he was convicted. But on appeal the judgment was reversed, the appellate court holding that these were mere preparations, and did not constitute an attempt within the meaning of the statute. In delivering the unanimous opinion of the court, Field, C. J., said: "It [the evidence] shows very clearly the intention of the defendant; but something more than mere intention is necessary to constitute the offense charged. Between preparation for the attempt and the attempt itself there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement towards the commission after the preparations are made. To illustrate: A party may purchase and load

a gun, with the declared intention to shoot his neighbor; but until some movement is made to use the weapon upon the person of his intended victim there is only preparation and not an attempt. For the preparation he may be held to keep the peace, but he is not chargeable with any intent to kill. So, in the present case, the declarations and elopement and request for a magistrate were preparatory to the marriage, but until the officer was engaged, and the parties stood before him, ready to take the vows appropriate to the contract of marriage, it cannot be said in strictness [*i. e.,* in a legal sense] that the attempt was made. The attempt contemplated by the statute must be manifested by acts which would end in the consummation of the particular offense, but for the intervention of circumstances independent of the will of the party."

The same principle was recognized by the supreme court of Pennsylvania in a recent case, and one which bears a striking resemblance to the case before us. There the defendant was indicted and convicted for an attempt to administer poison, under a statute the provisions of which are substantially the same as those of our own statute. It was proved at the trial that the defendant, in a conversation with the witness Neyer, stated his grievance against his intended victim, Waring, and his determination to be revenged, and then solicited Neyer to put poison in Waring's spring, so that he and his family would be poisoned, offering him a reward therefor. He also gave him directions how to administer the poison, and gave him the poison to be administered. But the witness refused to have anything to do with it, and handed it back to the defendant, and testified that he never intended to administer it. Upon these facts the supreme court held that all that occurred at the interview with the witness, and the legal inferences deducible therefrom, followed by no other act, were not sufficient to warrant a conviction for an attempt to commit the felony charged; that the act proved

did not approximate sufficiently near to the commission of murder to establish an attempt to commit it, within the meaning of the statute; and the judgment was accordingly reversed. "Merely soliciting one to do an act," said the court, "is not attempt to do that act. * * * In a high moral sense, it may be true that solicitation is attempt; but in a legal sense it is not. (*Stabler v. Com.*, 95 Pa. St., 321.)" The court in its opinion also referred to the case of *Reg. v. Williams*, 1 Car. & K., 589; 1 Denison, Cr. Cas., 39, which was a prosecution under the third section of the act of 1 Vict., from which the Pennsylvania statute was substantially copied, and in that case "it was held that the delivery of poison to an agent, with directions to him to cause it to be administered to another, was insufficient to establish an attempt to murder." In that case the agent was actually given money for his services, and immediately proceeded with the poison to the house of the intended victims, but upon his arrival there he gave up the poison to them and told them all about it. The prisoners were convicted, but at the ensuing term the case was considered by the fifteen judges, who held the conviction wrong.

This we regard as a correct statement of the law, at least so far as a distinction is drawn between intention and attempt. The testimony of the prosecutrix therefore, if given its full effect, fails to show an attempt within the meaning of the statute to commit the offense charged. Besides no sufficient reason is given by the prosecutrix for her failure to make complaint at an earlier period. Great delay in making complaint in a case of this kind is a strong circumstance tending to show that the charge is a fabrication, made in many instances as a means to accomplish the personal objects of the prosecutrix or other person, who may possess influence over her. In such cases the court should require sufficient testimony in corroboration to show that a crime was in fact committed. The offense charged when

in fact committed is of such a nature as to be well calculated to shock the sensibilities of the woman attacked. It would seem to be well nigh impossible for her to treat it as a light and trifling matter which made so little impression on her mind that immediately thereafter and for several hours she could play on a musical instrument and sing to those assembled at her father's house. She evidently was free and unrestrained, yet her sensibilities were so little affected that for months she disclosed the alleged charge to no one.

We cannot believe this to be true when an offense has actually been committed. An offense of this character, when clearly established, should be severely punished, but stale charges will be scrutinized very closely and the commission of the alleged crime must be fully established.

There evidently is a secret history to this case not shown by the testimony, and there is not a very friendly feeling between the prosecutrix and her father, hence the unnatural charge.

The court instructed the jury as follows : "If the assault was made, and with the intent to have sexual intercourse with the prosecutrix, the intent may have been to effect the purpose by prevailing upon her to submit, if this could be accomplished, or to carry out the purpose if necessary by force and violence, and against her will, and it is this latter mentioned purpose which must be shown beyond a reasonable doubt to warrant a conviction. But if the assault and such intent have been proven to your satisfaction, beyond a reasonable doubt, it is your duty to find the prisoner guilty, however unpleasant it may be." In this we think the court erred.

The blending of the two propositions together, one of which would not authorize a conviction, and referring to *such intent* in the manner set forth must have misled the jury and is erroneous.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other Judges concur.