JAMES NEWMAN

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 23, 1906.*

1. RAPE—*what essential to conviction of assault with intent to rape.* To sustain a conviction for an assault with intent to commit rape, every ingredient of the crime of rape, except the accomplishment of that crime, must be proved beyond a reasonable doubt.

2. SAME—*proof of assault and persuasion is not sufficient.* Proof of an assault, and of indecent and even violent familiarity in an attempt by the accused to persuade the female to yield to his desires, is not sufficient to sustain a conviction of an assault with intent to rape, unless it appears the accused intended to accomplish his object regardless of the will of the female.

3. SAME—*what does not sustain conviction of assault with intent to rape.* Proof that the accused attempted to persuade the prosecutrix to yield to his embraces, and that after her statement that she would call for help he "made the utmost use of his hands which would be called force," is not sufficient to sustain a conviction for assault with intent to rape, where the prosecutrix further testified that the accused, upon her remonstrance, stated that he could "do nothing against her will," and where his subsequent actions were consistent with such statement.

WRIT OF ERROR to the City Court of Alton; the Hon.
J. E. DUNNEGAN, Judge, presiding.

JOHN J. BRENHOLT, for plaintiff in error.

WILLIAM H. STEAD, Attorney General, CHARLES E.
WOODWARD, and J. F. GILLHAM, State's Attorney, for the
People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error was convicted in the city court of Alton
for an assault with intent to commit rape and sentenced to
the penitentiary.

Plaintiff in error was, and had been for several years
prior to his conviction, labor agent of the Illinois Glass Com-
pany. It was his duty to hire unskilled labor for said com-
pany's plant at the city of Alton. A short time prior to the
alleged offense he was informed by Mrs. Murphy, who was
employed as a domestic in the house of Mrs. Botts, that she
had met the prosecuting witness, Juanita Dowdall, in Car-
rollton a short time before and that said Juanita Dowdall
desired to get employment at the glass works. Plaintiff in
error told Mrs. Murphy to inform the girl if she came he
could probably get her employment, and Mrs. Murphy wrote
her to that effect. Afterwards Mrs. Murphy received a let-
ter from the prosecutrix that she would come to Alton on the
evening of the 17th day of December, 1905, and requested
Mrs. Murphy to meet her at the depot, which she did. As
the two women were leaving the depot they met the plaintiff
in error and Mrs. Murphy introduced him to the prosecutrix.
Mrs. Murphy inquired of plaintiff in error about a boarding
house for prosecutrix, and he accompanied them to the house
of William Kerfis. A room and bed were procured for the
prosecutrix at that place, and at her request Mrs. Murphy
staid with her there all night. Plaintiff in error did not
board at the Kerfis house, and it is not claimed he did any-

thing improper at the time he accompanied the two women to the boarding house. The next night, which was December 18, the prosecutrix staid all night with Mrs. Murphy at the house of Mrs. Botts, where Mrs. Murphy was employed. On the following day she returned to the Kerfis house. She testified that in the afternoon plaintiff in error visited her at her room, and this is the occasion when it is claimed the offense was committed. The prosecutrix testified plaintiff in error sat on the bed by her and asked her if, she didn't want to be his sweetheart; that she told him no, and he asked her if she would like to be his friend; that she told him she would, and in reply to some vulgar language from him she said she wouldn't do anything indecent for anybody's friendship. She testified he then "took his coat off and laid his left arm around my shoulder, then threw me back; first he got, up and let the window shade down; I says, 'I thank you, I will not have that;' he put me back there and rubbed up against me; then he put his arm around me and pulled me back on the bed and reached for my feet; I immediately told him I would call help, and he says, 'Of course I can do nothing against your will;' nevertheless he tried, and made the utmost use of his hands which would be called force." The evidence shows there were a number of persons in the house at the time and no outcry was made by the prosecutrix, nor did she tell anyone of the alleged assault nor make any complaint against plaintiff in error for more than two months, when she caused his indictment by the grand jury in the city court. Plaintiff in error denied ever visiting the prosecutrix or being in her room, and the testimony of two other witnesses corroborated his denial of being in her room at the time and on the occasion she says the assault occurred.

But taking the testimony of the prosecuting witness alone it would not establish the guilt of the plaintiff in error of the crime charged, beyond a reasonable doubt. To warrant a conviction for an assault with intent to commit rape the

proof must establish, beyond a reasonable doubt, every ingredient of the crime of rape except the accomplishment of that crime. "The proof must show, beyond a reasonable doubt, the unlawful attempt which constitutes an assault with an intention to have carnal knowledge of the female forcibly and against her will. There must be an intention to use such force as may be necessary to accomplish the object." (*Franey* v. *People,* 210 Ill. 206.) "To establish the crime it must appear from the evidence, not merely that there was an assault,—not merely that the prisoner was trying to persuade the prosecutrix to yield to his embraces, —but that his intention was, if it became necessary, to force a compliance with his desire at all events and regardless of any resistance made by his victim. * * * It must appear that he intended to use whatever amount of force was necessary to overcome her resistance and compel her to submit to his passion." (*Stevens* v. *People,* 158 Ill. 111.) In both cases above cited it was held that evidence that defendant was guilty of indecent and even violent familiarity with the prosecutrix in an effort to induce her to yield to his embraces, if such evidence fell short of showing, beyond a reasonable doubt, that he intended to accomplish his purpose by force and against her will, was insufficient to prove guilt of an assault with intent to commit rape. The intent may be shown by the declarations of the accused or it may be inferred from his acts and conduct at the time. (*Lathrop* v. *People,* 197 Ill. 169.) According to the testimony of the prosecutrix the conduct of plaintiff in error was most outrageous, but we do not see how it can be said to establish his guilt of the charge of attempting, by force and against her will, to compel her to submit to his passion. It is true, she testified he "made the utmost use of his hands which would be called force." That is a mere conclusion. In detailing his acts they fall short of proving that he used such force as showed, beyond a reasonable doubt, that he intended to compel her to submit to him whether she was willing or not. As

we have before stated there were other persons in the house, and according to the prosecutrix's testimony, at her first intimation that she would call for help plaintiff in error desisted and said he could do nothing against her will. If what he said had been wholly inconsistent with what he did on that occasion it could not relieve him from liability, but it was not inconsistent with his acts and conduct. Moreover, there was evidence tending to prove a motive of the prosecutrix for desiring to punish plaintiff in error. Mrs. Murphy testified that on the morning after the prosecutrix had staid with her at Mrs. Botts' house all night, Mrs. Botts discovered five dollars had been taken from her pocket book. It was suspected that the prosecutrix was guilty of taking it, and Mrs. Murphy reported it to plaintiff in error and requested him to ask the prosecutrix if she had it. In the afternoon of that day Mrs. Murphy testified she went to the house where the prosecutrix was staying and while she was there plaintiff in error came. Mrs. Murphy, plaintiff in error and William Bell, who claims to have been present, testify that when the subject of the missing five dollars was mentioned the prosecutrix admitted taking it, and said she had spent part of it for a pair of shoes and had paid the balance of it for board. These witnesses testify it was there arranged that Mrs. Murphy should pay Mrs. Botts the five dollars, that the prosecutrix should go to work at the glass plant at seventy-five cents per day and give Mrs. Murphy an order against her wages for the payment of the five dollars in installments of $2.50 each, and that the prosecutrix signed an order at that time for that purpose. Mrs. Murphy testified that the prosecutrix told her afterwards she would get even with plaintiff in error for coming down to see her about the five dollars.

In view of all the evidence we are not satisfied to approve this judgment of conviction. While it is true the jury are the judges of the weight of the evidence in criminal cases, yet the law confers on this court the power, and makes

it its duty, to reverse a judgment of conviction where the evidence shows such conviction to have been erroneous. *Mooney* v. *People,* 111 Ill. 388; *Keller* v. *People,* 204 id. 604.

The judgment of the city court of Alton is reversed and the cause remanded.    *Reversed and remanded.*