## No. 12,086.

### COMPTON v. THE PEOPLE.

Decided May 28, 1928.

Mr. Louis Wagner, for plaintiff in error.

Mr. William L. Boatright, Attorney General, Mr. William W. Gaunt, Assistant, for the people.

*En Banc.*

Mr. Justice Adams delivered the opinion of the court.

This case is before us on writ of error, and application for a supersedeas, to review a judgment on a criminal charge against defendant Compton.

The information under which he was convicted, omitting the usual formal parts, alleged that one Smith was a prisoner, lawfully detained in a jail in Jefferson county on a criminal charge, specified in the information, "and while the said Edward Smith was then and there so confined, James Compton on to-wit: the 14th day of March, A. D. 1927, at said county of Jefferson, in the state of Colorado, unlawfully aided and assisted the said Edward Smith while so detained in said jail in the county of Jefferson, in the state of Colorado, to make his escape from the jail, though no attempt to escape was actually made, by conveying or causing to be delivered to said Edward Smith instruments or arms proper to facilitate the escape of said Edward Smith."

Counsel for defendant filed a motion for a new trial on two grounds: (1) Error in overruling defendant's motion for a directed verdict; and (2) because the state failed to prove the allegations in the information. The assignments of error are limited to the same reason.

The gist of the essential evidence shows that Smith, the prisoner, was lawfully detained in jail at the time and place named, on a criminal charge as specified in the information. The deputy sheriff in charge of the jail testified that the defendant came to the jail and asked permission to see the prisoner, which request was granted. Defendant entered the jail; the deputy swung open a solid door, leaving a barred door between the prisoner and defendant. They stood there, talking in a rather loud tone of voice. Suddenly, the conversation seemed to lag. The deputy heard something like a package, a piece of paper, rattle. He laid his paper down, leaned over, looked around, and Smith, the prisoner, made a remark, "Jigger, there's the officer." The officer

said, "What in hell have you got there?" Defendant folded his coat together and said, "Nothing." The deputy reached inside, took a package away from defendant, and told him to sit down. The package, with a paper wrapping, contained hacksaw blades and files, three or four of each. When taken from defendant, it was in the left front pocket of his overalls, sticking out of his pocket, but wrapped as described.

Smith, the prisoner, called as a witness for defendant, testified, among other things, that defendant "Kind of leaned his hand up on the jail door, see, where they let you talk to them, and stood there just a few minutes, and he kind of felt up there in his pocket, like, and made a little move around there, and the deputy sheriff, I don't know his name, walked up and asked him what he was doing, and right at that time I walked away from the door." Compton did not pass anything to the prisoner, so Smith testified, and it is undisputed that the prisoner did not actually receive the saws or files. Defendant testified on his own behalf that he is a carpenter and millwright, and said: "I went to work, and no material was on the job, so I went back down town and fooled around and I took a notion to get me some files to go home to file my saw with, and get me a few hack saw blades, and I went out home." Later, he said, he met a friend; they went riding; a tire blew up; his friend stopped to fix it, and defendant, at the friend's suggestion, went to the jail to see if Smith, the prisoner, "needed any tobacco or any clean clothes or anything."

The jury found defendant guilty, and he was sentenced to six months in jail and to pay a fine of $100.

1. The only question that the defendant is entitled to have reviewed, is that the state failed to prove the allegations in the information, such being the sole reason alleged in the motion for a new trial and assignment of errors. Concerning the sufficiency of the evidence, we quote with approval, the language of Mr. Justice Sheafor in *Eachus v. People*, 77 Colo. 445, 448, 236 Pac. 1009:

"We can say here, as was said in the Cronin Case [74 Colo. 322, 324, 205 Pac. 271], that 'there was evidence from which the jury might reasonably have found as they did, though there was other evidence from which a contrary inference might have been drawn. Under that condition we cannot disturb the verdict.' "

2. Counsel for defendant says in his brief that the deputy sheriff "tried to create the impression in his direct testimony that the defendant had the tools in his hands, and concealed them by folding his coat over them, which, under cross examination, he said was not true." Counsel, however, has inadvertently misquoted the record. The folio number that he gives to sustain his statement says this: "Q. All right, now then, when you grabbed Mr. Compton, you took these files and saws away from him? A. Yes. Q. Where were they when you took them? A. He had a pair of top overalls and they were pushed down in this left top overall pocket, sticking out about half the length of the package." Counsel repeated his questions, and like answers were returned. The witness did not retract his previous testimony. The fact that the tools were wrapped in paper and under defendant's coat, is ignored by counsel in this effort to discredit the witness.

3. Although there is but one ground for the assignments of error, as stated above, nevertheless counsel for defendant uses it as a common center from which he indirectly attacks the information, and which, if he is correct, involves the integrity of the statute itself on which the charge is based.

Technical objections to the form of an information, first presented after conviction, are too late. *Bridge v. People,* 63 Colo. 319, 165 Pac. 778; *Dillulo v. People,* 56 Colo. 339, 138 Pac. 33; *Howard v. People,* 62 Colo. 131, 160 Pac. 1060; *Doyle v. People,* 65 Colo. 124, 173 Pac. 1141. And it is no less prohibitive merely because counsel gives his point a wrong designation or classification,

i. e., insufficiency of the evidence. The sufficiency of the information is not to be determined from the evidence.

4. Illustrative of the above, we quote the statute which defendant was charged with violating. It comes under the general category of legislation to prevent hindrances to public justice. It is section 6805, C. L. 1921, and reads: "If any person shall aid or assist a prisoner lawfully committed or detained in any jail for an offense against this state, or who shall be lawfully confined by virtue of any civil process, to make his or her escape from the jail, though no escape be actually made, or if any person shall convey or cause to be delivered to any such prisoner any disguise, instrument or arms proper to facilitate the escape of such prisoner, any person so offending (although no escape or attempt to escape be actually made) shall, on conviction, be punished by a fine not exceeding five hundred dollars and imprisoned in the county jail for a term not exceeding one year."

Counsel for defendant argues that at best, there was nothing more than an attempt to deliver the instruments to the prisoner. Granting for the nonce, that this be true, it is immaterial here. An information charging a crime necessarily charges an attempt to commit such crime. *People v. Webb,* 127 Mich. 29, 86 N. W. 406. It is admitted that under the common law, an attempt to commit a crime is equally indictable as a consummated crime. See also *Howard v. People, supra,* at page 135. And by the express terms of this statute, defendant is guilty regardless of the success or failure of his unlawful venture. As to delivery, it may be and undoubtedly is true that there was no completed delivery in the technical sense that we sometimes speak of the delivery of a deed, or article that requires an acceptance to make it complete. This was unfortunately frustrated by the vigilance of the official. No response or acceptance by the prisoner of the files and saws, was required to complete defendant's statutory crime.

5. It is urged that the defendant did not convey the instruments to the prisoner, but we think the evidence is ample to warrant the jury in concluding that he did. It shows that he took them to the door of his friend's cell, or place of confinement, which was as far as he could go. His journey was over, and he tried to make it effective. According to the prisoner himself, defendant's witness, defendant leaned his hand on the cell door, and felt in his pocket; the jailer heard the package or paper rattle, and acted quickly. The language of the statute is in the disjunctive, "Conveying *or* causing to be delivered." The conveyance was complete, and even if the delivery was incomplete, the crime was effected. There was, however, but one crime alleged and proven, which of course was enough.

6. Any variance between the allegations and proof not material to the merits of the case, or that does not tend to prejudice the substantial rights of the defendant on the merits, does not constitute reversible error. Section 7103, C. L. 1921. As said by Mr. Justice Denison in *Whitfield v. People,* 79 Colo. 108, 112, 224 Pac. 470: "We agree with the remarks of Mr. Justice Bailey (63 Colo. pp. 397 and 398, 167 Pac. 779). There is no possibility of mistaking the nature of the offense (C. L. 7062); nor does the point 'affect the real merits of the offense charged.'" (Citing cases.)

7. Even if it could be said with reason that the lone ground of error assigned is sufficiently comprehensive, it is still bad, under further authorities. As far as the statement of the offense is concerned, section 7072, C. L., provides that the information is sufficient when it is "set forth with such degree of certainty that the court may pronounce judgment upon a conviction according to the right of the case." *Bridge v. People, supra.* It is sufficient when it describes an offense either in the language of the statute, or so plainly that the nature of the crime may be readily understood by a jury. *Tracy v. People,* 65 Colo. 226, 228, 176 Pac. 280; *Junes v. People,* 72 Colo.

86, 87, 209 Pac. 512; *Sarno v. People,* 74 Colo. 528, 530, 223 Pac. 41; *People v. Apostolos,* 73 Colo. 71, 73, 213 Pac. 331; *Whitfield v. People, supra.*

8. The information does not allege, the evidence does not show, and the statute does not require, that there was or should be a jail break, or attempted exodus of the prisoner or prisoners from jail, in order to complete the crime. If this were so, the visitor at the jail could calmly and with impunity, convey or deliver a package of saws, files or dynamite, for that matter, and await the will and pleasure of his incarcerated friend. If the guest be successful, well and good; but, if discovered in the act, he need only bid the helpless jailor goodby. That some statutes are defective in this regard, may be conceded, but fortunately, our is not. See above section 6805, C. L. An examination will show that at least for sixty years, beginning with early territorial days, the legislature has wisely guarded against just this contingency, where the statute declares in one place, "though no escape be actually made," and in another, "although no escape or attempt to escape be actually made." In 21 C. J. 837, it is said: "In some jurisdictions it has been held that defendant's offense must be connected with some effort to escape on the part of the prisoners; in others, under statutory provisions, that there need be no overt act on the prisoner's part. An actual escape, however, need not be effected."

Our law comes under the latter part of the quotation —there need be no overt act on the prisoner's part. It is plain in its terms; statutes differ, certainly, but we are bound by ours, and are not disposed to go out of our way to hunt for means to abrogate it by judicial construction, particularly against sworn public officers, under bond for the faithful performance of their duties, and in favor of those disposed to commit a heinous crime. It may be true that the statute can be criticized by choosing separately selected portions for the purpose, with an intellectual detachment from the section as a whole, but this is not

the way to construe statutes. Defendant was charged with the commission of but one crime, perpetrated in a particular way, i. e., that he "unlawfully aided and assisted * * * *by* (the italics are ours) conveying or causing to be delivered," etc. The allegations and proof were sufficient to sustain the charge. If defendant did not know what accusation he had to answer, we have outlined what his lawyer's duty was, before trial, but there was no ambiguity or surplusage. .

9. Counsel for defendant thinks that if defendant be arrested again under the statute, he would not be entitled to a plea of former jeopardy. He is mistaken. He would be exonerated by the general rule, stated in *Davis v. People*, 22 Colo. 1, 2, 3, 43 Pac. 122, wherein it is said: "It is laid down by Wharton, as a general rule, that 'where the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first, * * * the plea is generally good.' Wharton's Crim. P. & P. sec. 456." The distinction that counsel for defendant now attempts to make is between a consummated crime, and an unsuccessful attempt to commit it, but it has no material bearing on the guilt or innocence of the accused.

10. Counsel for defendant suggests that section 16, article 2 of our Constitution has been violated; it requires that defendant may "demand the nature and cause of the accusation." He did not demand it, however, and even if demanded, this guarantee was not violated, for he was sufficiently informed. *People v. Martin*, 78 Colo. 200, 202, 240 Pac. 695.

11. A verdict of guilty raises a presumption that everything necessary to a conviction was established by the evidence. *Doyle v. People, supra.* There is nothing in the record to overcome this presumption.

Judgment affirmed.

MR. JUSTICE BUTLER and MR. JUSTICE WALKER dissent.

MR. CHIEF JUSTICE DENISON specially concurring.

I concur in the result though not with the whole argument of either the majority or the dissenting opinion. I think that the going to the prisoner with the tools for use in escape was assistance to escape; that since by the statute there may be assistance to escape though there be no escape, one is guilty of assisting who does any overt act toward assisting an escape even if the prisoner does nothing. It seems too meticulous to say that though there may be assistance without escape there cannot be assistance without an attempt to escape.

MR. JUSTICE BUTLER dissenting.

James Compton was charged with and convicted of the crime of aiding and assisting one Edward Smith to escape from the Jefferson county jail.

Section 6805, C. L., under which Compton was prosecuted, is as follows: "If any person shall aid or assist a prisoner lawfully committed or detained in any jail for an offense against this state, or who shall be lawfully confined by virtue of any civil process, to make his or her escape from the jail, *though no escape be actually made,* or if any person shall convey of cause to be delivered to any such prisoner any disguise, instrument or arms proper to facilitate the escape of such prisoner, any person so offending (*although no escape or attempt to escape be actually made*) shall, on conviction, be punished by a fine not exceeding five hundred dollars and imprisoned in the county jail for a term not exceeding one year."

1. Two separate and distinct crimes are created: (1) Aiding or assisting a prisoner to escape; and (2) conveying or causing to be delivered to a prisoner any disguise, instrument or arms proper to facilitate his escape. To constitute the first crime it is provided that no *escape* need be actually made. To constitute the second crime it is provided that no escape *or attempt to escape* need be actually made. The fact that the legislature clearly made a distinction between the two crimes

in this important particular seems to have been given but scant consideration in the majority opinion.

As Compton was charged with and convicted of the first crime, let us consider the language of the statute defining that crime. In *Hurst, et al. v. State,* 79 Ala. 55, the court said that: "The clause, 'assists such prisoner to escape,' in its ordinary import, means that the prisoner does effect his escape, and that he has assistance in accomplishing it." So, in our statute, the words "aid or assist a prisoner * * * to make his * * * escape," in their ordinary import, mean, (1) that a prisoner has attempted to escape; (2) that the defendant has aided or assisted him in such attempt; and (3) that the attempt has succeeded, i. e., that the prisoner has escaped. The words should be given that meaning except so far, and only so far, as other words limit the meaning. Their meaning is limited by the words, "though no escape be actually made." This dispenses with the third condition, but does not dispense with either of the other two. So limited, the meaning is, (1) that a prisoner has attempted to escape; and (2) that the defendant has aided or assisted him in such attempt. If these conditions concur, the crime has been committed, even though the attempt has failed and "no escape be actually made." In the absence of a statute providing otherwise, to constitute the crime of aiding or assisting a prisoner to escape there must be an attempt by the prisoner to escape. *State v. Christian,* 253 Mo. 382, 161 S. W. 736; *Harvey v. State,* 8 Ga. App. 660, 70 S. E. 141. There are statutes expressly dispensing with the necessity of proving an attempt. A failure to note that fact has misled the writer of the majority opinion into the position taken in that opinion. Thus, in paragraph 8 there is a quotation from 21 C. J., p. 837, the latter part being as follows: " * * * in others, under statutory provisions, that there need be no overt act on the prisoner's part. An actual escape, however, need not be effected." The opinion then says, "Our law comes under the latter

part of the quotation—there need be no overt act on the prisoner's part.'' The quotation itself shows that such holdings are by virtue of statutory provisions. To sustain the text, five cases are cited in the notes; two from Alabama and one each from Arkansas, Georgia and Pennsylvania. In Alabama, the statute expressly made the act a crime, ''whether such escape be *attempted* or effected or not.'' *Wilson v. State,* 61 Ala. 151; *Hurst et al. v. State,* 79 Ala. 55. The language already quoted from the opinion in the Hurst case indicates what the holding would have been had the statute not contained the words just quoted. In Arkansas, the statute makes the crime complete, ''whether such an escape be effected *or attempted* or not.'' *Maxey v. State,* 76 Ark. 276, 88 S. W. 1009. In Pennsylvania, the statute makes the act a crime, ''although no escape *or attempt to escape* be actually made.'' *Com. v. Rodman,* 34 Pa. Super. 607. The following is the opinion in full in *Simmons v. State,* 88 Ga. 169, 14 S. E. 122: ''That a person confined in jail, after effecting an exit from his own cell into a common hall, used a saw upon the fastenings of the door to the cell of a fellow-prisoner in such a way as to indicate a purpose to open that door, is evidence enough to convict him on an indictment for aiding such fellow-prisoner to escape, the statute declaring that the offense may be complete whether the escape be actually effected or not. Code, § 4482.'' The recital of facts is too meagre to make the decision satisfactory as a precedent, and the total absence of a discussion makes the opinion of little weight.

Upon such weak foundation rests the majority opinion on this—the controlling—point. Without the support of authority, the opinion on this point, it is my belief, is also without the support of reason.

As there is no evidence that Smith attempted to escape —indeed, the evidence affirmatively shows that he did not —Compton was not proven guilty of the crime charged.

118

2. The majority opinion says that, "an information charging a crime necessarily charges an attempt to commit such crime." As applied to the crime charged in this case, the proposition is correct. It is also true that such attempt is itself a crime. But the conclusion that this requires an affirmance of the judgment in the present case, is not justified. The crime charged is aiding and assisting Smith to escape. If Compton had succeeded in conveying the saw blades and files to Smith, he would have committed the second crime created by section 6805, supra, namely, the crime of conveying to a prisoner instruments proper to facilitate his escape. But, as Smith made no attempt to escape, Compton would not have committed the crime charged, namely, the crime of aiding and assisting him to escape. This being true, even if the court had submitted to the jury the question of Compton's guilt or innocence of the crime of attempt (which it did not do), and if the jury had brought in a verdict finding Compton guilty of attempting to aid and assist Smith to escape (which the jury did not do), the judgment could not be upheld. The verdict, by the way, was " * * * guilty as charged in the information."

3. It will not do to say that the information also charges Compton with the second crime created by section 6805, supra, namely, that of conveying to Smith instruments "proper to facilitate" his escape. One may aid or assist a prisoner in many ways in his attempt to escape; for example, by sawing or prying apart the window bars of the cell; by administering a drug to the jailor, or by seizing and binding him, or beating him into insensibility, and then taking his keys and unlocking the cell door; by removing portions of the cell wall or ceiling or floor; by setting fire to the jail; by conveying saw blades and files to a prisoner attempting to escape. Many other examples will occur to anyone. Some of the means adopted may constitute an independent crime, e. g., burglary, arson, assault and battery, false imprisonment, larceny, malicious mischief. Whether or not, in an

information charging one with aiding and assisting a prisoner to escape, it is necessary in Colorado to allege the means by which such aid or assistance is given, need not be considered here. The reports show that it is the common practice to state the means. If an information charges one with aiding and assisting a prisoner to escape, *by* forcibly seizing and binding the jailor, forcibly taking keys from his person, and unlocking the cell door, the crime charged would be, not assault and battery, or false imprisonment, or larceny, but aiding and assisting a prisoner to escape. On such an information, and upon proof of those facts, the defendant could not be convicted of assault and battery, or of false imprisonment, or of larceny. So, in the present case, the charge is, not that Compton conveyed to Smith instruments proper to facilitate his escape, but that he aided and assisted Smith to escape *by* conveying them to him. The conveying of the instruments to Smith was merely the means by which the crime charged is alleged to have been committed.

4. Even if the crime charged were conveying such instruments to the prisoner, the evidence does not establish the commission of that crime. The evidence is to the effect that Compton, with a package of saw blades and files in his pocket, went to the jail and conversed with Smith. There is no doubt that he went with the intention of conveying the blades and files to Smith. But before Compton could carry out his purpose, the deputy sheriff in attendance, becoming suspicious, searched Compton and took the instruments from his pocket, and thereupon placed Compton in custody. Compton, Smith and the deputy sheriff, the only witnesses to the occurrence, all testified that the instruments did not leave the possession of Compton. Some statutes, for example, those of Illinois, Michigan, Texas, New York, Arkansas, Kentucky, and perhaps other states, make it a crime to convey such instruments "into any jail," or to send them "into any prison." *Patrick v. People,* 132 Ill. 529, 24 N. E. 619; *In re Parks,* 81 Mich. 240, 45 N. W. 824;

*Peeler v. State,* 3 Tex. App. 533; *People v. Buckley,* 91 App. Div. (N. Y.) 586, 590, 591; *Maxey v. State,* 76 Ark. 276, 88 S. W. 1009; *Edwards v. Commonwealth,* 145 Ky. 560, 140 S. W. 1046. In Colorado, to constitute the crime, the statute requires the conveyance or delivery to be, not "to the jail," or "into the jail," but to the prisoner himself. The fact that the legislature adopted this provision, instead of the provisions in the statutes to which we have just referred, is important. Webster's New International Dictionary defines "convey" thus: "4. To cause to pass from one place or person to another; * * * 6. To transfer or deliver to another." The Standard Dictionary says that "convey" implies "delivery at a destination; as, I will convey the information to your friend." The language of the statute, "If any person shall convey or cause to be delivered to any such prisoner," indicates that the word "convey" is used in the sense of "deliver." Evidently it was intended to prohibit the same act (delivery), whether done by the defendant himself or by another person at his solicitation. In the case at bar, the most that can be said is that it was proven that Compton intended and attempted to convey or deliver the instruments to Smith, which attempt the vigilance of the deputy sheriff rendered abortive. The difference between the commission of a certain crime and an attempt to commit that crime, is not a mere fine-spun technicality, a trivial distinction, that does not affect the substantial rights of a defendant, but is a real, substantial difference, one that courts are not permitted to ignore. Ordinarily, at common law, an unsuccessful attempt to commit a crime is an independent crime—a misdemeanor. Bishop, Stat. Crimes, sec. 138. Common-law crimes are punishable in Colorado. C. L., secs. 6516, 7122; *Marmaduke v. People,* 45 Colo. 357, 101 Pac. 337.

X intends to set fire to and destroy the house of his enemy, Y. He goes to Y's house with that intent, taking paper and kindling, saturated with kerosene. He places

them against the house and applies a lighted match. The paper and the kindling take fire, but before the fire is communicated to the house, an officer arrests X and puts out the fire. Whatever other crime X commits in performing those acts, he does not commit arson. He deserves punishment of some kind; and, if the court should submit to the jury the question of his guilt or innocence of the crime of attempting to commit arson, and the jury should find him guilty of that crime, he would receive the punishment he deserves. But a conviction of arson could not be sustained.

*People v. Buckley,* 91 App. Div. (N. Y.) 586, is an instructive case. The defendant was prosecuted under a statute providing that, "A person who, with intent to effect or facilitate the escape of a prisoner, whether the escape is effected or attempted or not, * * * conveys to a prisoner any information * * * [calculated to aid the escape of prisoners], is guilty of felony, if the prisoner is held upon a charge, arrest, commitment, or conviction for a felony." The defendant sent to Carroll, a prisoner in jail, a registered letter containing certain information calculated to aid the escape of one or more of the prisoners. The letter was delivered at the jail, and was receipted for by Carroll. It was handed by the carrier to the keeper of the jail, who handed it to the warden. The warden, in the presence of Carroll, opened the letter and read it. The warden testified that "Carroll never had the letter"; that he (the warden) "intercepted it." The court held that there had been no delivery to Carroll. The court referred to another provision of the statute, declaring it to be a crime to send "into a prison" any disguise, instrument, weapon, or other thing with intent, etc., and said:

"There is a material difference in the language of the Penal Code (§ 87) in relation to the sending of information and the sending of a disguise, instrument, weapon, or other like thing. In the latter case it is sufficient if the object is sent into the prison; but as to forbidden

information it is necessary that it should be actually conveyed by the accused to a prisoner; in other words that it should reach its object through the agency of the accused. In this respect the defendant's crime failed of accomplishment because the warden seized the letter before its delivery and the guilt of the defendant then terminated in the abortive attempt.''

In the present case there was no conveying of the saw blades and files to Smith; Compton never parted with his possession of them; hence, even if Compton were charged with that crime—and he is not—the evidence does not establish his guilt. In such case, it could not properly be said that, as Compton in fact was guilty of an attempt to commit a crime, though not the one charged, he deserves some punishment; that he got it; and, therefore, that justice has been done. The question of Compton's guilt or innocence of the crime of attempting to convey the instruments to Smith was not, and under the information filed could not lawfully be, submitted to the jury. The jury did not, and under the information filed could not lawfully, find Compton guilty of that crime.

As Compton was not proven guilty of the crime charged, his conviction should not stand. If the district attorney had charged him with the crime that he did commit, and if the jury had found him guilty of that crime, Compton would properly receive, without a departure from well-established legal principles, the punishment he deserves. The judgment should be reversed.

MR. JUSTICE WALKER concurs in this dissenting opinion.