No. 19,099.

PEOPLE OF THE STATE OF COLORADO *v.*
ROBERT YOSHIO FUTAMATA.
(343 P. [2d] 1058)

Decided September 14, 1959.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. MATT J. KIKEL, District Attorney, Tenth Judicial District, for plaintiff in error.

No appearance for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THE defendant in error was the defendant in the trial court in a criminal case in which the charge was rape. Count 1 alleged that the crime was committed by force and violence, whereas Count 2 charged that the defendant had committed the offense by threatening bodily harm to the victim. Trial was to a jury and the verdict was not guilty. The People of the State of Colorado seek review of certain legal questions pursuant to C.R.S. 1953, 39-7-27. They contend that the trial court erred in (1) giving of particular instructions, (2) its rulings on the admission of certain evidence, (3) in its refusal to submit to the jury a verdict of assault to commit rape.

On the night of February 17, 1958, defendant went to the home of the victim and from a distance watched her go out of her home to an outhouse in the rear. When she emerged from this building he was lurking nearby and struck her on the head with something very heavy and hard (which he later confessed was a large rock), knocked her down and then struck repeated blows on her head, dragged her to an automobile which was parked in the street, pushed her into the back seat and drove to City Park in Pueblo. He then said to her, "We still have to go and get it over with." He ordered her to take off her clothes, pushed her back against the seat of the automobile and, in her words, "raped" her. The victim admitted that *she* removed her clothing and submitted to defendant's advances, but explained that this was due to her weakened condition and her fear that if

she refused to do so defendant would kill her. She also agreed to see him on a subsequent occasion if he would take her to the hospital. He complied with this latter request and drove her to the St. Mary-Corwin Hospital in Pueblo and waited while she went in for treatment. Immediately following her entry into the hospital she complained to the attendants, who called the police. Her complaint was repeated to the police and they arrested defendant as he was backing his automobile from the hospital parking lot. The arresting officer took him to the emergency room of the hospital where he was identified by the victim and he, at that time, admitted that he had brought her to the hospital. Subsequently defendant signed a written statement in which he generally corroborated the testimony of the victim, and showed members of the police department the route he had taken on the night of the alleged offense.

Examination of the victim by her physician revealed that she had a black eye, several face lacerations, a bump on her head which required sutures, a laceration of the left ear and other injuries. A vaginal test disclosed the presence of spermatozoa.

There had been no previous acquaintanceship between defendant and the victim. He was shown to have been employed as a judo instructor at the Y. M. C. A. and to have seen the prosecuting witness there where she worked as a clerk.

The People request review of the following:

1. The refusal of the trial court to allow the District Attorney to discredit character witnesses on behalf of the defendant by inquiring whether they had heard of specific other sex offenses attributed to the defendant.

2. The trial court's instruction on the subject of force as an element in the offense charged, which instruction is said to be misleading in that it contains misleading language on the element of actual force as an essential element of the offense, and fails to adequately instruct

on threats and fear or apprehension as a substitute for force.

3. The court's refusal to submit a verdict and appropriate instructions on the charge of assault with intent to commit rape on the ground that the offense had not been specifically charged.

1. *The question whether the court erred in refusing to allow the District Attorney to ask character witnesses whether they had heard of other sex offenses allegedly committed by defendant.*

The District Attorney made an offer of proof in which he proposed to cross-examine character witnesses as to whether they had heard that defendant had phoned other women and conducted intimate and insulting phone conversations with them. The offer was rejected. The People predicate their assignment that the refusal to receive this evidence was erroneous on *Brindisi v. The People,* 76 Colo. 244, 230 Pac. 797. This case held that when a witness has testified to the good reputation of defendant it is proper for him to be cross-examined as to whether he has heard that the defendant has committed other specific unlawful acts. The Court there points out the necessity for such cross-examination but also the necessity for strict supervision by the trial court.

This entire subject is also considered in an extensive note in 47 A.L.R. (2d) 1258, 1280, where it is said in part that:

" * * * trial courts are clothed with a broad discretion in respect to permitting the cross-examination of the defendant's character witnesses as to rumors or reports of particular acts or offenses."

One of the cases commented on in 47 A.L.R. (2d) suggests that the trial court should conduct a preliminary inquiry out of the presence of the jury so as to insure (a) that the alleged misconduct is actual; (b) that it is reasonably likely that it was the subject of the rumor in the community; (c) that it is not too remote and that it was of the same character as the act on trial. The trial

judge should also, according to the cases, see to it that the question is properly formed, that is, "Have you heard?" and that the jury is instructed at the time as to the limited purpose of the inquiry. See *State v. Steenson,* 35 N.J. supra, 103, 112 A. (2d) 203.

In the case at bar the District Attorney, with commendable fairness, requested a hearing out of the presence of the jury. While his good faith cannot be questioned, it is possible that the trial judge applied the salutary criteria set forth in *State v. Steenson,* supra, and concluded that one or more of these were not satisfied. In view of the control that the trial judge was justified in maintaining we cannot say that its ruling on this point was erroneous.

2. *The alleged error based upon the giving and refusal of instructions with respect to the element of force.*

It is urged that the trial court erred in giving Instruction No. 15 and in its refusal to give People's Tendered Instruction No. 1. These read as follows:

"INSTRUCTION NO. 15: The Court instructs the Jury that no rape is committed unless the sexual intercourse is accomplished by force and is without the consent and against the will of the female. If the female voluntarily consents to the act, no matter how tardily or reluctantly, the act does not constitute rape. It must appear, in order to constitute rape, that the female resisted to the best of her ability, and persisted in such resistance until her will was overcome by force, or by such fear or fright as prevented any further resistance. The amount of resistance possible must depend upon the surrounding circumstances, the regular strength of the parties, and the state of mind of the female.

"Mere objections in words, or such objections coupled with some resistance are normally not sufficient to make the act of the accused constitute rape. It must appear that the female did not consent to the intercourse at all, that she made all the resistance reasonably within her power, and that her will was, or had previously been

overcome by the actions and threats of the defendant to the extent that it put her in such fear and terror that she could not or dared not resist further.

"Consent of the woman from fear of personal violence is void. Even though a man lays no hands on a woman, yet if by an array of physical force he so overpowers her mind that she dares not resist, or she ceases resistance through fear of great harm, the consummation of unlawful intercourse by the man is rape.

"PEOPLE'S TENDERED INSTRUCTION No. 1: The Court instructs the jury that the term 'by force' does not necessarily imply the positive exertion of actual physical force in the act of compelling submission of the female; but force or violence threatened as a result of noncompliance and for the purpose of preventing resistance, or extorting consent, if it be such as to create a real apprehension of dangerous consequences, or great bodily harm, or such a recent physical attack upon the female, which would creat (sic) a real apprehension of dangerous consequences or be such as in any manner to overpower the mind of the victim so that she dare not resist, is, and upon all sound principles must be regarded, for this purpose, as in all respects equivalent to force actually exerted for the same purpose."

No evidence was adduced at the trial in support of the premise that the alleged unlawful sexual intercourse was accompanied by actual force and violence and it is questionable whether a verdict based on actual force should have been submitted. The undisputed testimony was that the victim submitted to the act because of fear which in turn was based on the vicious and aggravated assault and battery which preceded the act itself. In these circumstances it follows than an instruction which advised the jury that "no rape is committed unless the sexual intercourse is accomplished by force and is without the consent of the female" could only serve to confuse the jury. The confusion is not entirely eliminated by the further seemingly contradictory advice that "con-

sent of the woman from fear of personal violence is void." and by the additional admonition that "It must appear that the female did not consent to the intercourse at all."

Our statute (C.R.S. 1953, 40-2-25) recognizes the offense as rape even though there is no actual resistance where "the female person * * * is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution."

In *Magwire v. People* (1925), 77 Colo. 149, 235 Pac. 339, the Court condemned an instruction which contained the kind of internal contradictions here present. The following language in that opinion is applicable to Instruction No. 15:

" * * * Hence, considering this instruction as a whole we find it inconsistent in itself. It states two conflicting rules, one correct but incomplete, the other erroneous and prejudicial. We are unable to say which the jury followed, but cannot escape the conclusion that the only explanation of its verdict is that it followed the latter."

In the case of *Ellis v. The People,* 114 Colo. 334, 164 P. (2d) 733, it was said:

" * * * It may be urged that these instructions on the whole were favorable to defendant, but where a jury is charged by one instruction that if they are satisfied of guilt they may convict, and by another that if they believe certain undisputed facts they should acquit, and by still another that in order to convict they must find as true, matters which are admittedly untrue, the inevitable result is confusion and bewilderment. *Magwire v. People,* 77 Colo. 149, 235 Pac. 339. Under such instructions it is not surprising that the jury returned a verdict of guilty of a degree of homicide not supported either by the evidence or by the instructions. * * * "

Since the evidence was undisputed on the question whether the act was perpetrated with force, we conclude that Instruction No. 15, which treated a problem not within the evidence of the case and which contained

irreconcilable statements and which was formed as an abstract statement which could have been copied from a text book was erroneous.

The language of Tendered Instruction No. 1 is a verbatim quote from *Davis v. People,* 112 Colo. 452, 150 P. (2d) 67. Although there can be no quarrel with the accuracy of this as a statement of law we cannot agree that it is a proper instruction. We can only say that the People were entitled to an instruction which adequately and clearly defined fear and apprehension of bodily injury as a substitute for the ingredient of force.

3. *Whether assault to commit rape ought to have been submitted to the jury.*

The Attorney General argues that a verdict and definitive instructions allowing the jury to consider the charge of assault to commit rape should have been submitted even though the information did not contain a count on this subject because it is said the aggravated assault is a lesser included offense of rape. The exact question is one of first impression in Colorado although related issues have been decided. *Compton v. People,* 84 Colo. 106, 268 P. 577, declared the generally recognized rule that inclusion in the information of all of the elements of the substantive crime necessarily includes the constituent elements of an attempt to commit that crime. Other decisions have dealt with specific analogous problems. An information which charges assault with a deadly weapon with intent to commit great bodily harm has been held to include all of the elements of assault, *People v. Hopper,* 69 Colo. 124, 169 Pac. 152, but does not include battery. *Lane V. People,* 102 Colo. 83, 77 P. (2d) 121. The crime of joyriding has been recognized as of lesser degree and hence included within the charge of larceny. See *Casados v. People,* 119 Colo. 444, 204 P. (2d) 557. There are numerous decisions which hold that a charge of murder includes the lesser degrees of homicide and that the several lesser verdicts must be submitted except in exclusive first degree murder cases.

See *Baker v. People* (and the cases therein cited), 114 Colo. 50, 160 P. (2d) 983.

■ The approved test is: "If the greater of two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater." *Wharton, Criminal Law and Procedure,* Vol. 4, P. 752, Section 1888. See also *4 Wharton,* supra, Section 1799, and 44 *Am. Jur.* 983, Sec. 127. Applying this to the facts of the instant case we conclude that assault to rape is included in rape. Both include the necessary aggravated intent, and both contain the element of assault. The difference between the crimes is that rape requires the element of carnal knowledge by force (or threat of great bodily injury) whereas the corresponding element in assault to commit rape is the element of attempt which is included in the act just as assault is included in the charge of battery.

It does not follow from the conclusion that the aggravated assault need not be specifically pleaded that the court is invariably required to submit the lesser included crime to the jury. There remains the question whether the evidence justifies this action. Oftentimes the evidence precludes submission even when the offense is charged in a separate count, and in some cases the evidence is such that the jury must determine the case on the greater offense and that alone. An example of this is *Lewis v. People,* 124 Colo. 62, 235 P. (2d) 335. There it was held that a conviction of attempt to take indecent liberties was unsupported by the evidence and could not stand; that the evidence supported the completed act or nothing at all. The defendant's acquittal of the substantive charge ended the case. It is to be noted that this was not decided on the question of lesser included offenses and sufficiency of the pleading, but rather on the sufficiency of the evidence. It was there said:

" * * * In the case at bar the testimony offered in

support of the information could not possibly justify any reasonable person in concluding that there was any interference whatever in the completion of an act amounting to the taking of an indecent or immodest liberty, or that for any cause the intent so to do was not carried out. The evidence offered in support of the information, if believed, could only lead to the conclusion in the mind of a reasonable person that the indecent, immodest, or immoral liberty had been completely consummated. By the verdict of not guilty upon the first, second and third counts of the information the jury rejected the testimony offered by the people as being insufficient to establish the guilt of defendant upon the only counts of the information which the evidence tended to prove."

This same principle was recognized in *Martinez v. People,* 111 Colo. 52, 137 P. (2d) 690, where the Court said:

" * * * There is no question as to the rule of law that if a person is charged with a crime, and if the evidence shows a completed act, an acquittal on the charge will preclude a prosecution for an attempt to commit the act. An attempt, in criminal jurisprudence, generally is accepted as meaning an effort to commit a crime, and a direct, ineffectual act done towards its commission. *State v. Thompson,* 31 Nev. 209, 101 Pac. 557; *State v. Prince,* 75 Utah 205, 284 Pac. 108; *Johnson v. State,* 27 Neb. 687, 43 N.W. 425; *People v. Anderson,* 1 Cal. (2d) 687, 37 P. (2d) 67."

In the *Martinez case* it was held that the evidence supported the conviction of attempt, and it was differentiated on this ground in the *Lewis case.*

Further explanation of the sufficiency of the evidence limitation on *submission* of lesser included offenses is found in a recent decision of the New York Court of Appeals, *People v. Mussenden,* 308 N.Y. 558, 127 N.E. (2d) 551 (1955). There the defendant, charged with attempted robbery and attempted larceny, contended that

the attempted larceny ought to have been submitted notwithstanding that the evidence showed that force was used or, according to defendants, that the unlawful act was not committed at all. The Court said:

"The principle has, accordingly, evolved that the submission of a lesser degree or an included crime is justified only where there is some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one. (See, e.g., *People v. Moran,* 246 N.Y. 100, 102-103; *People v. Schleiman,* supra, 197 N.Y. 383, 390; *People v. Meegan,* supra, 104 N.Y. 529, 531; *Murphy v. People,* supra, 3 Hun 114, 115; see, also, *People v. Fiorenza,* 272 N.Y. 642.) The submission in such a case performs a function useful to the defendant and intelligible to the jury. The trial court may not, however, permit the jury to choose between the crime charged and some lesser offense where the evidence essential to support a verdict of guilt of the latter necessarily proves guilt of the greater crime as well. With the record in that state, there is no basis in the evidence for differentiating between the several offenses and no warrant for submitting any but that charged in the indictment."

A note on the *Mussenden* decision in 56 *Columbia Law Review* 888, 893, also expresses the distinction between the two types of cases.

"Where the evidence puts certain elements of the crime in issue, lesser degrees must be submitted. But where the evidence is not only sufficient to support conviction of the lesser crime, but points very strongly or conclusively to guilt of the greater, the propriety of submitting lesser offenses is not clear."

██ In the present case the defendant admitted his presence and did not deny the act itself. His contention was that force or its equivalent was not shown — that there was a failure to prove resistance. Thus, it was possible for the jury to entertain a reasonable doubt on this question and at the same time be convinced beyond a

reasonable doubt that the defendant had committed an assault with intent to commit rape. Since the evidence was sufficient to support this latter offense and since the record was such as to have justified a simultaneous acquittal on the charge of rape, we conclude that *Lewis v. People,* supra, is to be distinguished and that the trial court's refusal to submit a verdict and instructions on assault with intent to commit rape was erroneous.

The rulings and judgment are disapproved.

MR. JUSTICE HALL and MR. JUSTICE DAY dissent.

MR. JUSTICE HALL dissenting:

I respectfully dissent from that portion of the majority opinion which deals with the question of whether the court should have submitted to the jury the question of defendant's guilt or innocence of the offense of "assault to commit rape."

From the record and as outlined in the majority opinion, it appears that there was a continued, uninterrupted and successful effort on the part of the defendant leading to the act of sexual intercourse between the defendant and the complaining witness. There was no question whatever, as disclosed by the record and as indicated in the majority opinion, that the defendant did on the occasion involved have sexual intercourse with the complaining witness. The only question on which there was any controversy was whether the complaining witness consented or was forced to yield, and that question was submitted to the jury. The verdict of not guilty returned indicates that the jury must have concluded that there was consent and not force. There can be no question that if the defendant used force and threats and the complaining witness did not consent but resisted, the act of sexual intercourse constituted rape. An act of sexual intercourse so consummated constituted rape and, under such circumstances, could not amount to the offense of assault with intent to commit rape. Consum-

mation of the act constituting rape precludes the offense of attempt to commit the act. The general rule is stated in 75 C.J.S. 486, Section 20 (b):

" * * * An assault with intent to rape is a factual assault on a female with the intent to have intercourse with her by force and against her will, notwithstanding resistance on her part, and coupled with the present means of effecting this intent. An assault with intent to rape is an incompleted rape, so that if accused had consummated his intent he would be guilty of rape. * * * stated otherwise, an assault with intent to rape includes every ingredient of the crime of rape except the actual accomplishment of that crime. * * *.

" * * * Where the assault is made under such circumstances that the act of sexual intercourse, if it had been actually accomplished, would not have been rape, accused cannot be guilty of assault with intent to commit rape."

And in 75 C.J.S. 492, section 27:

"Force on the part of the man and resistance on the part of the female are essential elements of the crimes of attempt to rape and assault with intent to rape.

"Force. Force is an essential element of these offenses, and there must be such force used in connection with the circumstances of the case as to establish beyond a reasonable doubt a purpose to have carnal knowledge of the female with or without her consent, regardless of how slight such force may be. * * *."

In *Newman v. People,* 79 N.E. 80, 223 Ill. 324, it is said:

"To warrant a conviction for an assault with intent to commit rape the proof must establish, beyond a reasonable doubt, every ingredient of the crime of rape except the accomplishment of that crime."

I am of the opinion that out of one transaction cannot be spelled the two offenses of rape and assault with intent to commit rape. Where, as in this case, the uninterrupted actions of the defendant culminated in the act

·of sexual intercourse, the defendant was either guilty or not guilty of the offense of rape; he could not be guilty ·of an attempt to do an act that was actually accomplished. If there was no rape in the act of sexual inter·course, then there could be no assault with intent to ·commit rape.

This court has previously gone on record in conformity with the views above expressed in two cases mentioned in the majority opinion, to wit: *Martinez v. People,* 111 Colo. 52, 137 P. (2d) 690, and *Lewis v. People,* 124 Colo. 62, 235 P. (2d) 348.

In the *Lewis* case the court quoted with approval from 14 Am. Jur. 813, as follows:

" * * * It must also be observed that a failure to consummate the crime is as much an element of an attempt to commit it as the intent and the performance of an overt act towards its commission. Hence, when a crime is completely consummated, there can be no prosecution for an attempt."

This language fits the present case exactly, for there is no question that the ultimate act of having sexual intercourse was committed. So that if the other necessary ingredients of the crime of rape, which are essential to the crime of assault with intent to commit rape, were present, then the defendant is guilty of rape and, being guilty of rape, he cannot be guilty of the crime of an assault with intent to commit rape.

Both the *Martinez* and the *Lewis* case and the language there used, in my humble opinion, fit the case at bar. If we have the necessary proof to warrant conviction of the lesser offense of an attempt, then that evi·dence coupled with the admission of sexual intercourse at the time and place of the assault certainly establishes rape and the prosecution for an attempt to commit the ·completed offense must fail.