**STATE of Missouri, Respondent,**

**v.**

**Lettie B. THARP, Appellant.**

**No. 49681.**

Supreme Court of Missouri,

Division No. 2.

Oct. 14, 1963.

Rehearing Denied Feb. 10, 1964.

---

Thomas F. Eagleton, Atty. Gen., Jefferson City, O. Hampton Stevens, Special Asst. Atty. Gen., Kansas City, for respondent.

Roy Coyne, Joplin, for appellant.

L. H. Wilbers, Jefferson City, for appellant on motion for rehearing.

EAGER, Judge.

Defendant was charged by information under § 557.290 RSMo 1959, V.A.M.S.,[1] with conveying to the place of confinement of one Leonard Lee Crego, in Jasper County, tools useful in facilitating "his attempted escape." There was in fact no attempted escape for the simple reason that the offending instruments, eight hacksaw blades, were found on Crego almost immediately. A jury found defendant guilty and imposed a term of two years' confinement. Motion for new trial was overruled and this appeal followed.

Since the sufficiency of the evidence is questioned, we digest it in some detail. Actually, there is little controversy on the facts. Crego was in jail on a felony charge; defendant, a woman 23 years of age and living in Kansas City, had known him for a year or less, and had had "dates" with him. On April 9, 1962, Crego was brought from the Jasper County jail at Carthage to the courthouse in Joplin for arraignment, arriving about 8:30 a. m.; he was placed in the holdover, a large cell adjoining the sheriff's office. The door of that cell consisted of steel bars and also a mesh screen. Defendant had arrived at the sheriff's office with her small son about 7:30 a. m. After Crego arrived she asked and was given permission to talk with him through the cell door and did so talk. The general purport of the evidence was that Crego did most of the talking and seemed to be angry, that there was some argument, and that he swore; also, that at one point the defendant was crying. After this conversation defendant went away, but she came back shortly and talked with Crego further at the same place. At approximately 9:00 o'clock Crego, and possibly other prisoners, were taken into the Division One courtroom for arraignment. He sat on the first row inside the railing and perhaps two or three feet to the left (west) of the gate leading inside the rail. Deputy Sheriff Webber sat next to the aisle on the first row outside the rail, almost behind Crego, and another deputy sat on the right of the gate, just inside the rail. Defendant, who had first been seated two or three rows back in the courtroom, came up and sat immediately behind Crego and to the left of Webber. She testified that Crego motioned or called for her to move up, and the court bailiff partially corroborated that fact. Defendant and Crego carried on some conversation in the courtroom. Defendant had a "purse" or "pocketbook," obviously a woman's handbag, which she placed on the seat just to her right. Crego reached back over the railing, took this handbag, placed it on the

---

1. To which revision all statutory citations will refer.

seat to his right, and opened it; he took out a brown paper sack and put it in his inside coat pocket; he also took out some pictures and looked at them. When he took the handbag, defendant made some remark to him about some pictures being in it. Both deputies saw him put the brown sack in his pocket, but did nothing at the time. There was no evidence that defendant handed the handbag to Crego or that she did anything more than place it on the bench; however, she made no protest and made no move to retain it. She testified that Crego took it as she was lifting her child up to the bench. The court officials were in their regular places and, as defendant's counsel brought out, presumably could have seen these events had they been looking. The bailiff did see some of the events and so testified. When the proceedings were terminated, and as Crego left with the deputy or deputies, he handed the bag back to defendant. He had been searched before he was taken to the courtroom and some letters and pictures taken from him. When he was returned to "the lock-up" he was searched again and the sack with eight hacksaw blades was found and taken from him; a washcloth and the pictures were also found. It is not shown more specifically just where this search was made. After leaving the cell initially, Crego had been in the continuous view of one or more deputies.

A machinist of the O. & S. Supply Company in downtown Joplin identified the defendant as the woman who, accompanied by a little child, had bought eight hacksaw blades from him on the morning in question, taking them away in a brown paper sack. She had given a fictitious name and stated that the size of the blades made no difference.

The defendant testified in her own behalf. The substance of her testimony was: that on the morning in question Crego wanted her to get some hacksaw blades, argued with her, cursed and threatened her and became angry, and that she cried; that she was afraid of him when he was angry; that she did walk several blocks and bought the blades; that after she left the shop she decided that she would not give them to him; that she talked with him again through the door and told him she had the blades, but that she was not going to give them to him; that she refused to pass them to him through the door, which she said could have been done "one at a time"; that when she went into the courtroom she first sat about three rows back, but that Crego called to her to "sit up here"; that she laid her pocketbook on the bench; and that Crego reached back and picked it up, in plain sight of everyone around, with no assistance from her; that she said to him, after he had opened it, that there were some pictures in it; that Crego was mad because he did not feel that she had tried sufficiently hard to get him out on bond, and thought she had another "boy friend"; that he also was angry because she had refused to give him the blades; that she had no idea that he would take them in the courtroom; that she made no protest, because, she says, she knew he would be searched.

The information charged that, while Crego was detained in the Jasper County jail on a felony charge, defendant did "unlawfully, feloniously, and wilfully convey and cause to be conveyed into said jail and place of confinement aforesaid, 8 steel hacksaw blades, being tools and instruments proper and useful to aid and facilitate Leonard Lee Crago in his attempted escape from said imprisonment by cutting and sawing the bars of a cell in which the said Leonard Lee Crego was confined, with the intent * * * to aid and facilitate" his escape from "said jail and place of confinement * * *."

Defendant's complaints here, as we understand them, concern the supposed error in giving Instruction No. 3, and the sufficiency of the evidence under this particular information; perhaps these include also an objection to the information, but in any event we would consider that in-

dependently. We shall first consider the information. The statute in question, § 557.290, is quoted here for convenience: "Every person who shall convey into the penitentiary, or any jail or other place of imprisonment, any disguised instrument, arms or other thing proper or useful to aid any prisoner in his escape, with intent thereby to facilitate the escape of any prisoner lawfully committed to or detained in such penitentiary, jail or place of confinement, for any felony whatever, whether such escape be effected or attempted or not, shall, upon conviction, be punished by imprisonment in the penitentiary for a term not exceeding ten years." The information obviously charges an offense within the meaning of the statute. It charged that defendant conveyed and caused to be conveyed into the "jail and place of confinement" eight steel hacksaw blades, instruments proper and useful to aid in Crego's attempted escape, with the felonious intent to facilitate his escape. The information sufficiently follows the wording of the statute and it is not subject to objection.

The point made here that the evidence was insufficient seems to be based primarily on the contention that defendant conveyed the blades into the *courtroom* and not into the *jail;* also, that defendant did not actually intend to give the blades to Crego, did not do so, and could not properly be found guilty. The first of these points may be considered along with the objections to Instruction 3, for all are really part and parcel of the same contention.

Instruction 3, the State's principal instruction, stated succinctly was: that if the jury found that defendant unlawfully conveyed or caused to be conveyed to Crego, while he was a prisoner in custody "and detained in the Jasper County Jail, or holdover cell, at Joplin, Missouri, upon a felony charge * * *," and conveyed or caused to be conveyed "into the Jasper County Jail, or holdover cell, at Joplin, Missouri, the same being a place of imprisonment, 8 steel hack saw blades, the same being tools and instruments proper

and useful to aid Leonard Lee Crego in his attempted escape * * * with the intent * * * wilfully, feloniously * * * to aid and facilitate his escape" from said jail, then the jury might find defendant guilty. The substance of the point made here is that the instruction did not conform to the evidence in that defendant took the blades into the courtroom and not into the jail or hold-over cell; also, that the statute expressly requires that the offending instrumentalities be conveyed into the "jail or other place of imprisonment." The point was preserved in the motion for a new trial.

Defendant cites and relies upon the case of People v. Webb, 127 Mich. 29, 86 N.W. 406 (1901), where the defendant gave books to a lawyer who was representing two inmates of the jail, asking "how the boys were off for reading matter." The lawyer took the books to the sheriff's office which, together with the sheriff's residence, was attached to the jail and constituted the entrance to the jail. There the sheriff found saws and files concealed in the covers of the books. Under a statute much like ours and upon an information which followed the statute generally, the court held that the conviction could not be sustained on that evidence, because the "jailer's office was not a place of confinement for the prisoner." The court there apparently felt that the defendant should have been convicted of an attempt to commit the statutory crime rather than of the crime itself. It should also be noted that the tools there never reached the prisoners at *any location,* and the case appears to be distinguishable.

The State cites the case of Compton v. People, 84 Colo. 106, 268 P. 577 (1928). There, while defendant was talking to a prisoner through the barred door of a jail, the jailer heard the rattle of paper, and apprehended defendant before he could pass in a wrapped package of saw blades. It was held that the evidence was sufficient to sustain a conviction under the statute which made it an offense to "aid or assist a prisoner * * * to make his or her escape

from the jail, though no escape be actually made * * *," or to convey or deliver articles for escape to a prisoner. The court held that a "conveyance" was complete and the crime effected, even though there was no completed "delivery." There were two dissenting judges. No other case is cited on this point pro or con, and we are not unduly impressed with either of these; nor do we find any Missouri cases on the question.

The real purpose and intent of our statute is to penalize efforts to aid a prisoner in an escape (whether accomplished or even attempted, or not), by conveying to him any instrumentalities useful to him in making an escape. It is true that the statute uses the words: "convey into the penitentiary, or any jail," but these are immediately followed by the words, "or other place of imprisonment." Here, Crego's primary place of confinement seems to have been the jail in Carthage. He was brought to Joplin for arraignment and placed in a hold-over cell, the door of which was not only barred but covered with a wire mesh or screen. Defendant, after talking with him there, admittedly went out and purchased the blades, then returned and talked further; they discussed the fact that she had the blades. When he was taken to the courtroom by deputies, he was still in custody and he was still legally imprisoned. State v. Rudolph, 187 Mo. 67, 85 S.W. 584, 589. There can be no doubt of this. Two deputies sat within a few feet of him. In that particular situation he actually *received* the saw blades. The argument over whether the conveyance or delivery was accomplished in the jail or in the courtroom is more or less of a quibble. So far as we are concerned, the blades were conveyed to him in a "place of imprisonment," within the very wording of the statute. The information charged that the blades were conveyed "into said jail and place of confinement aforesaid." The wording of the instruction was somewhat more restrictive; it required a finding that defendant conveyed the saw blades to Crego

while he was a prisoner "and committed and detained in the Jasper County Jail * * * and [did] convey [the blades] * * * into the Jasper County Jail, or hold-over cell, * * * the same being a place of imprisonment * * *." Defendant did convey the blades to Crego, while he was a prisoner and detained in the jail. We hold further that she conveyed or caused them to be conveyed into the jail. Any other holding would be a perversion of the very purpose and object of the statute. The blades were in defendant's possession at the very door of the cell; and wire mesh may have prevented Crego's receiving them then, but in any event he soon got them. He ultimately conveyed them back to his cell or to the adjoining sheriff's office. We do not approve such a narrow view of the phrase "into any jail," as was adopted in the Webb case, at least as applied to the facts of our case. The giving of Instruction No. 3 did not constitute prejudicial error and, by the same token, the evidence was sufficient to sustain a conviction under the information.

The essential defense was that defendant had changed her mind right after buying the blades, that she never intended thereafter to give them to Crego, and that she had no idea that he would grab the bag right in the courtroom and take them. This, in essence, was a claim that she had abandoned the project, and we may assume that this was argued to the jury under Instruction No. 3 which required the finding of an *intent* to aid in an escape. Considerable of defendant's argument here is devoted to the factual issue that she did not *give* the blades to Crego. The complete answer to that argument is that the jury found all such issues against the defendant, thus finding that she *did intend* for Crego to take the blades when she made them accessible to him, regardless of her protestations later.

Counsel says that the wording in the information referring to the facilitating of an attempted escape "by cutting and

sawing the bars of a cell in which the said Leonard Lee Crego was confined," is "confusing and misleading" and that there was no such evidence. A crime is completed under these circumstances "whether such escape be effected or attempted or not" (§ 557.290); the words complained of, looking to some possible future escape or attempt, may be regarded as surplusage. The material allegation was that the blades were "useful to aid and facilitate" an attempted escape. The point is without substance.

We have examined those parts of the record which we are required to review independently under Rule 28.02, V.A.M.R. Finding no reversible error, the judgment is affirmed.

All of the Judges concur.