### COMMONWEALTH *vs.* RICHARD CROWLEY.

Suffolk. November 25, 1895. — April 2, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Homicide — Self-Defence — Apprehension of Assault — Evidence.*

There must be an actual apprehension of an assault which would cause great bodily harm, as well as reasonable cause to apprehend such an assault, to justify a person in arming himself with a dangerous weapon for the purpose of using it in repelling the assault.

After A. with others had separated A.'s brother and B., who had assaulted the brother in a saloon, A. and his brother, who wished to avoid B., were let out of a side door of the saloon and started to go home. B. followed them, or went out of his way to intercept them, and stood in a doorway, and when they passed by he followed them, and a fight ensued, in which B. was stabbed and killed by A. with a knife which he took from a table in the saloon as he left, and carried away with him. The homicide occurred about twenty minutes after A. left the saloon, and about half a mile distant therefrom. *Held,* that evidence of any exclamation of fear on the part of A. at or about the time he took the knife and left the saloon, and also evidence of what he said at the same time about " being afraid of the crowd outside," among whom was B., was competent upon the trial of an indictment against A. for the homicide.

INDICTMENT for manslaughter, in causing the death of John E. Burns by stabbing him with a knife, on May 4, 1895, at Boston. At the trial in the Superior Court, before *Sheldon*, J., the jury returned a verdict of guilty; and the defendant alleged exceptions. The facts appear in the opinion.

The case was argued at the bar in November, 1895, and afterwards was submitted on the briefs to all the judges.

*W. H. Baker*, for the defendant.

*J. D. McLaughlin*, Second Assistant District Attorney, for the Commonwealth.

FIELD, C. J.　The indictment is for manslaughter, charging the defendant with killing·John E. Burns by stabbing him with a knife ; and the defendant justified the homicide on the ground that he was acting in self-defence.　There was evidence that Burns in the saloon of one Jacobs was the aggressor in an assault made upon the defendant's brother a short time before the homicide complained of, and that after Burns and the defendant's brother had been separated by the defendant and others, the defendant and his brother wished to get away and go home without being noticed by Burns, and that they were let out of the side door of the wholesale department of the saloon by one Ward for that purpose.　There was also evidence that Burns followed the defendant and his brother, or that he went out of his way to intercept them on their way home, and stood in a doorway, and that when the defendant and his brother passed by, " he followed them, and the trouble began."　The homicide occurred about twenty minutes after the defendant took the knife in the wholesale department of the saloon, and about half a mile distant from the saloon.　The government put in evidence the fact that the defendant took the knife from the table in the saloon and carried it away with him. As the indictment is for manslaughter, it may be assumed that the government conceded that the killing was in hot blood, but whether the defendant took the knife for the purpose of assaulting Burns if he could find him, or for the purpose of defending himself if Burns found and assaulted him, was material.　It was competent for the defendant to show, not only that he had reasonable cause to believe that Burns would assault him, but that he actually believed it.　There must be an actual apprehension on his part of an assault which would cause great bodily harm, as well as reasonable cause to apprehend such an assault, to justify him in arming himself with a dangerous weapon for the purpose of using it in repelling the assault.　The fight at the saloon and the homicide are not necessarily to be treated as two independent transactions.　The evidence tended to show that they were in effect one continuing transaction in the minds of Burns and of the defendant.　See *Commonwealth* v. *Woodward*, 102 Mass. 155.

The exceptions recite as follows : " The Commonwealth offered

as a witness said Ward, who testified among other things, in direct examination, that the defendant spoke to him immediately before he let the brothers out of said door, but did not testify and was not asked what was said. The defendant's counsel asked said Ward on cross-examination; 1st, for the purpose of explaining what the defendant said to O'Connell [a police officer]; 2dly, for the purpose of showing the state of mind of the defendant at the time, as to whether he was in fear; and 3dly, as a part of the *res gestæ*, these questions: ' Did Richard say anything to you with reference to the fact that he was afraid of the crowd outside?' ' Did Richard make any exclamation of fear?' it being intended by the defendant's counsel to show that these questions related to a conversation that occurred at the time the brothers left the saloon through said side door when Ward let them out."

It seems to us that any exclamation of fear on the part of the defendant, at or about the time when he took the knife and was let out of the saloon, was competent as indicating actual fear on his part. Burns was one of the crowd outside, and apparently there was evidence for the jury that the defendant had reasonable cause to believe that Burns might assault him on his way home. We think, too, that what the defendant said at the same time about being afraid was competent as tending to show his state of mind with reference to any actual apprehension of an assault by Burns. *Commonwealth* v. *Trefethen*, 157 Mass. 180. Similar questions have been admitted by courts elsewhere, as calling for facts which were considered by those courts a part of the *res gestæ.* See *Stiles* v. *State*, 57 Ga. 183; *Carr* v. *State*, 43 Ark. 99; *Wood* v. *State*, 92 Ind. 269.

It is true that it does not appear by the exceptions what answers would have been given to the questions, but the purpose of the defendant's counsel in asking them appears, and the expectation on the part of the counsel of what the answers would be may fairly be inferred. Ward was the Commonwealth's witness; and the defendant's counsel could not be presumed to know in advance precisely what Ward would testify to; and it is not satisfactory to us, under the facts shown in the present case, to say that it does not appear that the defendant has been harmed by the exclusion of the questions.

*Exceptions sustained.*