Bernard Tomson, J.
These are omnibus motions by the defendant for orders to dismiss two indictments. The motions have been consolidated for the convenience of the court.
To summarize the disposition of these motions: Indictment No. 43807 is dismissed; count 1 of Indictment No. 44408 is dismissed; the balance of the motion (to dismiss counts 2 — 11 of Indictment No. 44408) is denied.
The court finds that the Grand Jury minutes are not legally sufficient to sustain counts 1 and 2 of Indictment No. 43807. These counts charge the defendant with committing the crime of grand larceny by extortion.
Section 155.05 (subd 2, par [e]) of the Penal Law defines extortion as follows: "A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will * * * (vi) Cause a strike, boycott or other collective labor group action injurious to some person’s business; except that such threat shall not be deemed extortion when the property is demanded or received for the benefit of the group in whose interest the actor purports to act, or * * * (viii) Use or abuse his position as a public servant by performing some act within or related to his official duties, or by *98 failing or refusing to perform an official duty, in such manner as to affect some person adversely” (emphasis supplied).
The sine qua non, then, for a finding of extortion is the "instilling in him [the victim] a fear”.
The Grand Jury minutes fail to show that the defendant instilled a fear in the victim Sawyer, an assistant vice-president of the Bank of North America, that either a strike action, boycott, etc., injurious to the bank’s business would occur or that the defendant would use or abuse his position as a public servant as required by section 155.05 (subd 2, par [e], els [vi], [viii]). Sawyer’s Grand Jury testimony is illuminating on this issue.
"Q: Mr. Sawyer, did Mr. Haifa at any time indicate to you that he represented Local 802 of the Union, of the Musicians’ Union in addition to his capacity as Director of Music at the Coliseum?
"A: I couldn’t say that he actually stated that, no. With the talk of Unions and so forth, the obvious association was there, yes.
"Q: Now, did you and Mr. Haifa in the course of these discussion over the telephone enter into an agreement for the use of musicians?
"A: Before this was changed, I sent it back to him, yes, or at the same time.
"Q: And what agreement did you enter into?
"A: We had informed him, I had informed him, this is by phone, I believe, that we had decided we would be using some music and I don’t feel this was due to their pressure, but due to what we felt would be our needs. In fact, that’s a certainty. So I told him I had — in fact, I think this was, he called me the day after I had already changed this and forwarded the original back to him indicating our agreement with 300-dollar expenditure, and I remember in that conversation that he was still pushing — that’s the only way to put it — for something more, more of a commitment, which we declined to do at that time.
"Q: What was your final agreement with Mr. Haifa with regard to music?
"A: Finally we decided on our own to use some additional music because we added something to this program that we didn’t originally plan or at least not as elaborately as we did, and that was a reception for the people involved, County *99 officials and so forth. We hired music in addition to that and because of time and so forth involved, ñgure came to $200., which as it related to the other ñgures or charges was, seemed equitable.” (Sawyer’s testimony, Grand Jury minutes; emphasis supplied.)
By any standard, this does not meet the requirement of the statute that fear be instilled in "another person” (Sawyer).
This case is distinguishable from People v Dioguardi (8 NY2d 260), where the court found that the victim feared economic harm.
Section 850 of the former Penal Law provided: "Extortion is the obtaining of property from another, or the obtaining the property of a corporation from an officer, agent or employee thereof, with his consent, induced by a wrongful use of force or fear, or under color of official right.” (Emphasis supplied.)
In interpreting this statute (former Penal Law, § 850), the court in Dioquardi stated: "Moreover, it is not essential that a defendant create the fear existing in the mind of his prospective victim so long as he succeeds in persuading him that he possesses the power to remove or continue its cause, and instills a new fear by threatening to misuse that power as a device to exact tribute (People v. Weinseimer, 117 App. Div. 603, 607, supra; Callanan v. United States, 223 F. 2d 171, cert, denied 350 U. S. 862; United States v. Varlack; 225 F. 2d 665). Our statute, as well as the Hobbs or Federal Anti-Racketeering Act (U. S. Code, tit. 18, § 1951, subd. [b], par. [2]) which was patterned after it (United States v. Sweeney, 262 F. 2d 272, 275, fn. 3), talks in terms of a wrongful use of fear, and the ultimate issue ' "is not so much the cause of the victim’s fear, as it is whether or not defendants played upon that fear, in other words, made use of that fear to extort money or property” ’ (Callanan v. United States, 223 F. 2d 171, 174, supra).” (People v Dioguardi, 8 NY2d 260, 268, supra; emphasis supplied.)
Section 155.05 (subd 2, par [e]) of the Penal Law apparently has modified section 850 of the former Penal Law by eliminating the words "wrongful use of force or fear” and by now requiring "instilling in him [the victim] a fear”. This court need not determine whether section 155.05 (subd 2, par [e]) of the Penal Law modifies the rule in Dioguardi since under either standard, the evidence presented to the Grand Jury is not legally sufficient. There was no showing here that (1) fear was actually instilled in the victim, nor (2) that the language *100 and acts of the defendant created a situation where the instilling of fear may reasonably be inferred or presumed.
"Respondent urges that Winfield’s testimony as to the substance of appellant’s statement (at the time it was alleged that the 'pay offs’ were to be change from appellant to Caputo) 'That that was the way it was going to be,’ constituted a threat that induced fear. Assuming but not deciding that the words constituted a threat, we find nothing in the record which indicated any fear was created in the mind of Winfield, who testified that his conversations with appellant 'were always cordial and on a friendly basis.’ In order to constitute the crime of extortion the statute clearly requires evidence of a threat which creates fear in the person threatened. We find the evidence here insufficient to support the jury verdict on this charge in the indictment.” (People v Rollek, 280 App Div 437, 439, affd 304 NY 905; emphasis supplied.)
[Material omitted from publication.]
One point raised by the defendant merits further discussion. Defendant contends that section 801 of the General Municipal Law contains a true exception and must be negatively pleaded.
Section 801 of the General Municipal Law provides in part: "Except as provided in section eight hundred two of this chapter, (1) no municipal officer or employee shall have an interest in any contract with the municipality of which he is an officer or employee, when such officer or employee, individually or as a member of a board, has the power or duty to (a) negotiate, prepare, authorize or approve the contract or authorize or approve payment thereunder (b) audit bills or claims under the contract”.
Section 211 of Book 1 (McKinney’s Cons Laws of NY, Statutes) in discussing provisos and exceptions provides in part: "The reason upon which this rule of pleading rests seems to be that when a party relies upon the enacting clause of a statute containing an exception, as the foundation of his action, he cannot logically state his case unless he negatives the exception. However, if the modifying words are no part of the enacting clause, and are to be found in some other part of the statute, or in some subsequent statute, it is otherwise, and he may then state his case in the words of the enacting clause and it will be prima facie sufficient. When the reason of the rule and the necessity for pleading the negative is borne in mind, it is not very important to deal with the somewhat *101 vague and shadowy distinctions, which are to be found in the books, between an exception and a proviso. The distinction, however difficult to state, has always been recognized. This distinction should not be so mechanically applied that substance yields to form and the burden of pleading and proof is determined solely by the accidental position in which the clauses of the statute are drafted. ” (Footnotes omitted; emphasis supplied.)
Section 801 of the General Municipal Law refers to an "exception” which is, in reality, a "proviso” since it refers to another section of the statute (§ 802) for modification of section 801 and need not be pleaded. (Cf. People v Kohut, 30 NY2d 183.) The modifying words are not part of the enacting clause, but rather are found in section 802. "In determining for this purpose whether a given provision is an exception or a proviso the true test is to be found not in whether the qualifying words are prefaced by 'except’ or 'provided’ but in the nature and meaning of the qualifying words themselves.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 211.)