# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL PAUL MARSH,
*Appellant.*

## (No. 10-79-01199, CA 14365)

603 P2d 1212

Jack A. Billings, Eugene, argued the cause for appellant. With him on the brief was Diment, Jagger & Billings, Eugene.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

RICHARDSON, J.

**RICHARDSON, J.**

Defendant appeals his conviction of theft by extortion, ORS 164.075. He contends the court erred in admitting testimony regarding another crime contemplated by defendant and his accomplices and that the court erred in overruling his motion for a directed verdict of acquittal.[1]

From the evidence the jury could find the following events occurred. Defendant and two friends, Tony Merrill and Steven Pittman, lived in Grants Pass. Defendant and Pittman desired to purchase a house but had no money. They needed approximately $1,000 to commence the transaction. In the latter part of January, 1979, the three men discussed acquiring money by obtaining a gun and robbing an unspecified business in Portland. They attempted to obtain a gun from some of their acquaintances but were unsuccessful. On January 30, 1979, they left Grants Pass for Portland in defendant's vehicle. They ran out of money for gasoline and stopped in Eugene.

After lunch they devised a plan to extort money from a Eugene drug store by means of a telephoned bomb threat. By prearrangement Merrill went into the drug store wearing an orange coat with white stripes and stood by the magazine rack. The manager of the drug store received a telephone call just after Merrill entered the store. He was told by the caller that there was a bomb in the store that could be detonated by remote control. He was instructed to give some money to the man standing by the magazine rack wearing an orange coat with white stripes. He was advised not to call the police and that the bomb would be exploded if he did.

The manager hung up and discussed the situation with another employe, who advised him to call the

---

[1] Defendant's brief does not set out the assignments of error as required by Rule 7.19, Rules of Appellate Procedure. In the course of reading the record we discovered counsel for defendant had made proper objections. We recommend that appellate counsel read the Rules of Appellate Procedure.

[573]

police. The police were called, and several plain clothes officers arrived very shortly. At the direction of a police officer the manager marked currency totalling $160 and put it in a bag. He then approached Merrill and asked if he was the one who was to receive the money. Merrill responded affirmatively, took the money and left the store and was arrested. Defendant and Pittman were arrested a short time later. Defendant made incriminating statements to the police which are not involved in this appeal.

Merrill testified on behalf of the state. Over objection, he recounted the preliminary discussion the three men had about acquiring a gun and committing a robbery in Portland. Two other witnesses, who were friends of the three men, also testified, over objection, concerning the robbery discussion.

In the first assignment defendant contends it was error to admit the testimony about the robbery discussion. He argues that it was not relevent to any issue in the case and allowed the jury to draw improper inferences to the defendant's prejudice.

The proper analysis is to determine if the evidence was relevent; if it was it would nevertheless have been excluded if the inflamatory nature of the improper inferences outweighed the probative value. *State v. Hockings,* 29 Or App 139, 562 P2d 587, *rev den* 279 Or 301 (1977), *cert den* 434 US 1049 (1978). We conclude the evidence was relevant.

In order to convict defendant of the crime charged it was necessary for the state to show that he was involved in the crime with Merrill. The testimony of Merrill indicated the three men planned the crime, that he went into the store and one of his two compatriats was to make the telephone call. There was no direct evidence of who made the call. It was necessary for the state to show not only that defendant was associated with Merrill but also that he had the requisite intent to commit theft by extortion. In meeting the burden of

proof the state was entitled to show that it was not simply a coincidence that Merrill and defendant were in Eugene and that Merrill was involved in a theft. It was relevant to show that the three men left Grants Pass with a preliminary plan to commit an armed robbery in Portland, that they were initially frustrated in that plan because of the inability to obtain a gun and finally by the lack of funds for gasoline to travel beyond Eugene. They altered their initial plan to obtain money by criminal means and decided to meet their original objective by the means of extortion. This tends to demonstrate that defendant had an intent to obtain money by criminal means, which intent survived the change in plan necessitated by their inability to acquire a gun and to get to Portland. The following excerpt from defendant's closing argument to the jury tends to demonstrate the need of the evidence:

"The next portion of the case has to do with Mr. Marsh's involvement, if any. Now, we know that he was with Mr. Merrill at some point during the day. He told the police officers that, but it's hard to see what that tells you. I suppose that means if you were with somebody at a time shortly after they, or shortly before they, committed a crime, then you're in trouble. But, of course, that's not the law. You can't be responsible for what other people do unless you have directed that they do that, unless the state has proved beyond a reasonable doubt that you did so. * * *"

We also conclude the probative value of the evidence outweighed any improper inferences the evidence disclosed. The evidence was that defendant and the other two men discussed committing an armed robbery. There was no evidence they did anything more in fruition of this plan than to commence a journey to Portland. The jury could draw an inference that a defendant, who was willing to discuss commission of an armed robbery, was a man of general bad character. But the fact that the evidence may tend to show these characteristics does not make it inadmissible if the evidence is also relevant and probative of

[575]

some fact the state is entitled to show. The evidence connecting defendant with the crime and demonstrating the requisite intent was circumstantial. The evidence of defendant's participation in the discussion regarding the robbery had substantial relevance and probative value and outweighed the inference the jury could draw as to defendant's character or propensity to commit a crime. The court did not err in admitting the evidence.

In the second assignment defendant claims the court erred in denying his motion for a directed verdict of acquittal. In essence he argues that there was no evidence that the manager of the drug store was motivated by fear in turning the money over to Merrill. He contends that because the police were called and the money was given to Merrill at the police officer's direction the most he can be guilty of is attempted theft by extortion.

ORS 164.075(1) provides:

> "A person commits theft by extortion when he compels or induces another person to deliver property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will in the future:
>
> "(a)   Cause physical injury to some person; or
>
> "(b)   Cause damage to property; or
>
> "* * * *."

The jury was instructed on the elements of theft by extortion and on the lesser included offense of attempted theft by extortion. Defendant did not assign the giving of these instructions as error. Assuming that the subjective state of mind of the victim is an element of the offense it was a factual determination for the jury as to whether he was in part motivated by fear of an explosion in giving the money to Merrill. The jury could infer that the store manager called the police and ultimately surrendered the money because of a concern that there was actually a bomb in the store which would be detonated if the money was not

delivered. We cannot say, as a matter of law, that the participation of the police in marking the money and directing the manager to give it to Merrill was only an attempted theft. The motion for directed verdict of acquittal was properly denied.

Affirmed.