**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43254**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Opinion No. 76 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 21, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| PATRICK SEGUNDO OAR, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven J. Hippler, District Judge.

Judgment of conviction and sentence for grand theft by extortion, <u>affirmed</u>.

Eric D. Fredericksen, Interim State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge

Patrick Segundo Oar appeals from his judgment of conviction for grand theft by extortion following a jury trial. Specifically, Oar argues there was insufficient evidence to support his conviction and the district court imposed an excessive sentence. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Oar was being housed in the Ada County Jail for a parole violation when he met fellow inmate, "Omar." Omar was a drug trafficker who had been distributing drugs from Mexico to California and Idaho prior to his arrest. Omar had been arrested for methamphetamine trafficking after one of his associates, M.D., assisted police as a confidential informant and testified against Omar.

1

At the time Oar met Omar, M.D. owed Omar several thousand dollars for drugs Omar had previously given to M.D. Upon learning of this debt, Oar agreed to help Omar collect the money from M.D. with the help of a woman named Blake that Oar knew from a previous job. As part of the plan, Oar gave Blake a letter written by Omar that Blake was instructed to deliver to M.D. The letter stated that it was from Omar, contained details about Omar that M.D. knew, and instructed M.D. to pay the debt. The letter also stated, "my freands [sic] in California are really mad so I don't want you guys get [sic] in troble [sic] let's fixe [sic] this before becomes [sic] a big problem."

Blake visited M.D.'s place of work late at night. Blake stated that she was there on behalf of Omar and delivered the threatening letter to M.D. In response, M.D. told Blake that M.D. would pay the full amount but that she needed a few days to get the money together. The next morning, M.D. contacted the detective with whom M.D. had worked as a confidential informant in the case against Omar. The detective provided M.D. with marked currency and directed her to deliver the money to Blake while recording the conversation. In a transaction monitored by police officers, M.D. gave the money to Blake, who was then arrested.

Oar was indicted on one count of conspiracy to commit grand theft by extortion, naming Blake as co-conspirator, Idaho Code §§ 18-1701, 18-2403(2)(e), 18-2407(1)(a)(1). Oar was also indicted on one count of grand theft by extortion, I.C. §§ 18-2403(2)(e), 18-2407(1)(a)(1), 18-204. The State later filed an information against Oar charging a persistent violator enhancement, I.C. § 19-2514. Following a joint trial with Blake, Oar was found guilty on both counts and admitted to the enhancement.

The district court imposed seventeen-year unified sentences with five years determinate on both counts. These sentences were set to run concurrently to one another but consecutive to Oar's existing sentence for his parole violation. Oar timely appeals.

## II.

## ANALYSIS

In his appeal, Oar argues that there was insufficient evidence to support his conviction for grand theft by extortion. He also argues that the district court abused its discretion by imposing an excessive sentence in light of the mitigating factors presented at sentencing. We address each issue in turn.

2

**A.      Sufficiency of Evidence**

Appellate review of the sufficiency of the evidence is limited in scope.  A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt.  *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991).  We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence.  *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985).  Moreover, we will consider the evidence in the light most favorable to the prosecution.  *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Oar maintains that the statutory language for the crime of grand theft by extortion requires that his threat actually be the compelling force behind the victim's act of delivering the property.  While Oar does not suggest that M.D. never felt fear as a result of the threatening letter, Oar does argue that M.D.'s fear instilled by the threatening letter did not compel M.D.'s delivery of the money.  Oar acknowledges that there was evidence to support finding that he attempted to compel, induce, or cause M.D. to deliver the money by threat of physical injury, but that it was not his threat which ultimately resulted in M.D.'s act of delivering the money.  Oar argues that the "undisputed" evidence at trial indicated that M.D. delivered the money because of the detective's instruction, not because of fear.

We first address Oar's argument by examining the statutory language establishing the elements of extortion to determine to what extent the fear instilled by the extortionist must compel the delivery of property by the victim.  This Court exercises free review over the application and construction of statutes.  *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003).  Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction.  *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000).  The language of the statute is to be given its plain, obvious, and rational meaning.  *Burnight*, 132 Idaho at 659, 978 P.2d at 219.  If the language is clear and

3

unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.

The crime of grand theft by extortion is set forth in Idaho Code § 18-2403(2)(e). This statute reads, in relevant part:

> A person obtains property by extortion when he *compels or induces another person to deliver such property* to himself or to a third person *by means of instilling in him a fear* that, if the property is not so delivered, the actor or another will:
> 1. Cause physical injury to some person in the future. . . .

(emphasis added).

This statutory language is unambiguous, thus we need not explore beyond the plain language. *See State v. McIntosh*, 160 Idaho 1, 6, 368 P.3d 621, 626 (2016) ("[L]ooking elsewhere for interpretative guidance is only appropriate when the plain language is ambiguous."). The plain language establishes that a defendant's threat must instill a fear that compels or induces a person to deliver property. The basic premise behind the crime of statutory extortion is the defendant's use of fear to obtain property. *See* 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW: § 20.4 (2d ed. 2016). However, the statutory language here does not mandate that the fear instilled by the extortionist be the sole or even the primary force compelling the victim's surrender of property.[1] The fear instilled by the extortionist need only remain a motivating force at the time the victim surrenders the property.[2] Consequently, a defendant who obtains property from a victim absent fear instilled by the defendant's threat can be guilty only of attempted extortion. *See People v. Gardner*, 38 N.E. 1003, 1004 (N.Y. 1894) (holding defendant could not be guilty of completed crime of extortion where victim delivered

---

[1]    Conversely, some jurisdictions require that the fear caused by the extortionist must be the primary force motivating the victim's compliance. *See People v. Bollaert*, 203 Cal. Rptr. 3d 814, 836 (Cal. Ct. App. 2016) ("In order to establish extortion, the wrongful use of force or fear must be the operating or controlling cause compelling the victim's consent to surrender the thing to the extortionist." (internal quotation omitted)). The California extortion statute reads: "Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." CAL. PENAL CODE § 518 (West 2016).

[2]    This is consistent with the New York extortion statute, which reads identically to the Idaho extortion statute. *Compare* N.Y. PENAL LAW § 155.05(2)(e) (McKinney 2016) *with* Idaho Code § 18-2403(2)(e). *See also People v. Raffa*, 393 N.Y.S.2d 852, 854 (N.Y. 1976) ("In order to constitute the crime of extortion the statute clearly requires evidence of a threat which creates fear in the person threatened."

property absent any fear from defendant's threat, but could be guilty of attempted extortion due to his intent to instill fear).

We next turn to Oar's argument that the evidence is "undisputed" that police compelled M.D. to deliver the money to Blake. Although this argument may be factually correct, it falls short of precluding Oar's conviction as a matter of law. His argument suggests a proposition that, where police are involved in the exchange of property between a victim and an extortionist, such involvement precludes a jury's ability to find that the victim was compelled by fear instilled by the extortionist's threat. While Idaho courts have never addressed such a proposition, we are guided by other jurisdictions with similar extortion statutes. These courts hold that even though fear must motivate the delivery of property to the extortionist, police involvement does not automatically overcome or dissipate the motivating fear. *See State v. Marsh*, 603 P.2d 1212, 1215 (Or. Ct. App. 1979); *State v. Prince*, 284 P. 108, 110 (Utah 1930).

In *Prince*, the defendant threatened to kill the victim unless he gave the defendant money. *Prince*, 284 P. at 109. The victim contacted police, who instructed the victim to give the money to the defendant and agreed to follow the victim and apprehend the defendant after he received the money. *Id.* at 110. On appeal from his conviction for extortion, the defendant argued the evidence showed that the victim's conduct of paying the money was not actuated by fear, but rather by his intent to entrap the defendant at the suggestion of law enforcement officials. *Id.* at 109. The court disagreed, stating there was sufficient evidence for the jury to find that the victim's fear, induced by threats, was a controlling factor despite the police involvement. *Id.* at 110. The court explained:

> From the whole record we are unable to say that the evidence conclusively shows that the fear which [the victim] suffered before he visited the sheriff had been so overcome and dissipated that when the money was paid he was no longer actuated or controlled primarily by fear induced by threats.

*Id.*

Then, in *Marsh*, the defendant participated in a plan to extort money from a drug store manager. *Marsh*, 603 P.2d at 1213. The plan involved calling the store manager and threatening to detonate a bomb in the store unless the manager gave money to the defendant. *Id.* at 1213. After the manager called the police, several plain clothes officers arrived and directed the manager to put money into a bag and give it to the defendant. *Id.* The defendant moved for a directed verdict, arguing there was no evidence showing the manager of the drug store was

5

motivated by fear in giving the defendant the money. *Id.* at 1215. On appeal from the district court's denial of the motion, the court affirmed the district court by reasoning:

> [I]t was a factual determination for the jury as to whether [the victim] was in part motivated by fear of an explosion in giving the money to [the defendant]. The jury could infer that the store manager called the police and ultimately surrendered the money because of a concern that there was actually a bomb in the store which would be detonated if the money was not delivered.

*Id.*

Conversely, in *People v. Bonsignore*, 250 N.Y.S.2d 345, 346 (N.Y. App. 1964), the defendant threatened the victim with accusations that he had filed false income tax returns, and the defendant demanded a large sum of money. *Id.* The victim paid the defendant the money with the consent and at the direction of the district attorney while surrounded by concealed police officers. *Id.* During trial, the State presented no evidence that the victim's payment of the money was motivated by fear. *Id.* On appeal from the conviction of extortion, the court held that without such presentation by the State, there was insufficient evidence to sustain the conviction of extortion. *Id.*

In deciding the issue of whether police involvement precludes finding a threat extortionate, we follow the guidance of these other jurisdictions and hold that it does not. As the finders of fact, it is the province of the jury to determine whether and to what extent police involvement impacted the motivating fear instilled in the victim by the extortionist. This factual determination must be made based upon the facts of each specific case. Thus, in the case at bar, Oar could still be guilty of extortion if the State provided sufficient evidence for the jury to conclude that, despite the police involvement, M.D.'s surrender of money to Blake was compelled, at least in part, by the fear instilled by the threatening letter.

During trial, M.D. testified that she used to distribute methamphetamine for Omar. M.D. stated that while working for Omar, he would reference the people he worked for in California, insinuating that they were not nice people. After M.D. was confronted by police officers regarding M.D.'s illegal activities, she agreed to participate as a confidential informant against Omar, which resulted in Omar's conviction and incarceration. M.D. testified that when Blake came to collect Omar's debt, it was as though M.D.'s "biggest fear just walked through the door." She described feeling threatened by the letter that Blake delivered and decided "it would be better to deal with the nice woman, [Blake], or the option was going to be the not-so-nice people in California." M.D. was terrified when she contacted the detective, to the point that

M.D. kept the doors to her building locked at night while she was working. M.D. further stated, "I'm still scared to this day actually because of my role, my involvement."

Similar to *Prince*, the evidence presented at trial was sufficient for the jury to conclude that M.D. was fearful as a result of the threatening letter. Moreover, the evidence at trial did not conclusively show the fear which M.D. suffered before she contacted the detective had dissipated such that it no longer motivated the surrender of money to Blake. In fact, M.D. admitted during trial that she still felt fearful because of the role she played in Omar's conviction and that Omar was still unaware that M.D. was a police informant. Additionally, similar to *Marsh*, the evidence before the jury was sufficient to support a reasonable inference that M.D. contacted police, acted at their direction, and delivered the money to Blake based upon M.D.'s fear that she would be harmed if she did not turn over the money. Unlike *Bonsignore*, where no evidence was presented that the victim was motivated by fear, here there was evidence for the jury to find that M.D.'s cooperation with police was at least, in part, motivated by her fear from the threatening letter.

The jury was instructed that, to find Oar guilty of grand theft by extortion, the prosecution must prove that "Oar caused M.D. to deliver [the money to Blake] . . . by creating in M.D. a fear that if the property were not so delivered then the defendant or some other person would physically injure some person in the future." In considering the evidence before the jury in the light most favorable to the prosecution, we conclude that there was sufficient evidence before the jury that Oar caused M.D. to deliver the money to Blake by creating in M.D. a fear that she would be physically injured.

**B.      Excessive Sentence**

The district court sentenced Oar to a unified sentence of seventeen years with five years determinate on the grand theft by extortion conviction. He argues this sentence is excessive in light of the mitigating factors. These factors include Oar's acceptance of responsibility, remorse, and family and community support.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*,

7

103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Applying these standards and having reviewed the record in this case, we cannot say that the district court abused its discretion. In rendering its decision, the district court emphasized that Oar's conduct jeopardized not only the safety of the victim, M.D., but also the safety of his co-defendant, Blake. The court also expressed concern with the fact that Oar was able to perpetrate this crime while in custody. After considering Oar's criminal history and the nature of the crime, the court concluded that a significant penalty was appropriate for the purpose of protecting society and achieving retribution. The court's sentence demonstrates its focus on the primary objectives of sentencing and is not an abuse of discretion. Accordingly, Oar's sentence is affirmed.

### III.
### CONCLUSION

The evidence at trial was sufficient to support the jury's conclusion that fear instilled by the threatening letter caused M.D. to deliver the money to Blake. Further, the district court did not abuse its discretion in sentencing Oar. Accordingly, we affirm Oar's judgment of conviction and sentence.

Judge GRATTON and Judge HUSKEY **CONCUR**.

8